### The People *vs.* Holmes and others.

The security required to be given by a *constable* before entering on the duties of his office may be in the form of a *penal bond* to the people, though it may be, and *it seems* it is preferable it should be, in the form of a simple agreement without any penalty to pay, &c.

An action of *debt* in the name of the people may be maintained on such bond, by any person to whom the constable has become liable, although *covenant* may be brought by such person on the condition of the bond in his own name.

Where to an action of debt on such bond the defendant pleaded *non est factum,* and subjoined a *notice* that the plaintiff in the execution, for the neglect in the collection of which the suit was brought, had bid in the property

UTICA,
July, 1830.

The People
v.
Holmes.

of the defendant at a sale under it, and had thus been satisfied, *it was held*, that evidence of acts and declarations on the part of the plaintiff having a tendency to lull the sureties of the constable into security was inadmissible, as not coming within the scope of the issues presented by the pleadings.

On a motion for a new trial on a case made, a party may object to the charge of the judge, although no exception was taken at the trial, especially where he has excepted to the introduction in evidence of the matter constituting the substance of the charge.

Where a verdict is set aside on the ground of the admission of evidence not warranted by the pleadings, leave will be given to amend on payment of all costs subsequent to the pleading allowed to be amended.

THIS was an action of *debt*, tried at the Jefferson circuit in June, 1829, before the Hon. NATHAN WILLIAMS, one of the circuit judges.

The suit was commenced in February, 1829. The declaration is on a bond to *the people*, in the penal sum of $1000; conditioned, "that if the above bounden Jesse Holmes, appointed a constable for the town of Brownville, and county of Jefferson, shall pay to each and every person such sum of money as the said constable shall become liable for, on account of any execution which shall be delivered to such constable for collection, then," &c. The bond bore date 8th March, 1826. Six breaches are assigned in the declaration, the substance of which is, that on the 7th February, 1827, J. Williams and H. H. Merrill obtained a judgment before a *justice of the peace*, against L. Gilson for $200,43 damages, and $1,25 costs on the confession of Gilson; that on the 12th February, 1827, an execution was issued against the defendant in the judgment with his consent, and delivered to Holmes, the constable, who, on various grounds set forth in the breaches, it is alleged, had become liable for the monies directed to be levied by the execution. The defendants pleaded *non est factum*, and subjoined to their plea a notice, in substance, that on the trial of the cause they would prove that by virtue of the execution set forth in the declaration, Holmes, the constable, levied upon the goods and chattels of the defendant in the execution, and sold the same at public auction, when goods and chattels to the amount of $200,93 were bid in by one *Nathan Rathbone, as the agent of the plaintiffs* in the execution, who received the same in full satisfaction

of the execution; that after such sale and purchase, the said goods and chattels were left in the possession of the defendant in the execution, with the consent of the plaintiffs; and that on the 1st September, 1827, Gilson paid to Williams and Merrill $300 on account of the same. On the trial of the cause the bond was produced. The defendants objected to it, as an instrument not authorized by law; which objection was overruled. The plaintiffs then gave in evidence a receipt of Holmes, the constable, by which he acknowledged to have received of *Nathan Rathbone* $208,04, in full of certain property bought by him at vendue on a sale by virtue of the execution in favor of Williams and Merrill against Gilson.

The defendants offered to prove the facts set forth in their notice; evidence of which was objected to as inadmissible, on the ground that the notice not being as definite and certain as a special plea, it could not be received. The objection was overruled, and the defendants proved by Gilson, the defendant in the execution, that by the desire of Williams, one of the plaintiffs, he requested *Rathbone* to bid off the property for Williams, and that he supposed at the time that he did so. *Rathbone*, however, testified that he *did not* bid in the property as the agent of Williams and Merrill, but bought it on his own account; that he had no recollection of Gilson speaking to him on the subject, but at all events, that he neither accepted nor acted under any agency. That at some time between six and twelve months after the sale, he had a conversation with Williams on the subject of the purchase made by him, in which Williams insisted that he, the witness, had acted as his agent in such purchase; that he would insist upon having the property, and that he had received satisfaction of his judgment. He told Williams that he had neither accepted or acted under any agency. This witness further testified that on the 8th February, 1828, he paid Holmes, the constable, the amount of his bid, received a bill of sale of the property purchased by him and transferred it to one *A. Walton*. Gilson further testified, that some time after the sale, Williams told the constable "that if the property was bid off for him, as Gilson had informed him,

he wanted a bill of sale made out for him; and further, that he, the witness, had told the constable that Rathbone would bid off the property, that he had requested him to do so; but he did not recollect that he had said any thing about Rathbone's agency; that the property was left in his possession, that under the supposition that it was bid off by Rathbone for Williams and Merrill, he had intended to redeem it, and had paid Williams and Merrill $100; that the business remained in this situation until he was informed that the constable had given a bill of sale of the property of Rathbone on his own account, and *Walton*, the assignee of Rathbone, commenced a suit for a portion of property.

The defendants, (the sureties of the constable,) contending that they had been lulled into security by the neglect of Williams and Merrill, to demand payment of their execution, and their conduct in regard to the agency of Rathbone, offered to prove that the constable was *insolvent*. To this evidence, the plaintiffs objected, insisting, 1. That it was inadmissible under the general issue, and that they had not been apprised of such defence in the notice subjoined to the plea; 2. That the agency of Rathbone, the substratum of the defence set up in the notice having been disproved, no other matter was admissible in defence under the state of the pleadings; and 3. That the sureties of the constable not having severed in their defence, but joined with the constable in the plea and notice, could not set up a separate defence. These several objections were overruled, and the questions reserved for the opinion of the supreme court. It was then proved that the constable was insolvent, but that he was equally so at the date of the bond on which this suit is brought.

The judge charged the jury that if Williams and Merrill had treated Rathbone as their agent, and so conducted themselves in relation to this matter as to induce the sureties of the constable to believe that they, Williams and Merrill, were the purchasers of the property; and if they, the jury, believed that the sureties of the constable had been thus lulled into security, and that they neglected on that account to provide for their indemnity, their verdict ought to be for the defendants. The jury found for the defendants subject to the opinion of

this court on the several questions raised at the trial, (and the case stated that the judgment should be according to that opinion.) The jury also found that Rathbone was not the agent of Williams and Merrill, in the purchase of the goods at vendue. A motion is now made for a new trial.

*C. P. Kirkland*, for the defendants. The acts and declarations of Williams and Merrill, the plaintiffs in the execution, relative to the sale of the property of the defendant in the execution, in satisfaction of their demand, were such as warranted the jury in finding a verdict exonerating the sureties of the constable from their liability. 7 *Johns. R.* 337. 10 *id.* 597. 3 *Starkie's Ev.* 1390, *n. s.* The principle that a party loses the benefit of a defence he may have by joining with another who has no defence, applies only in cases of *torts*.

This action cannot be maintained, for though in the name of the people, it is confessedly prosecuted for the benefit of Williams and Merrill, the plaintiffs in the execution. The action should have been in *covenant* on the condition, in their names, and not in *debt* on the bond, in the name of the people. The people are *trustees* for whomsoever it may concern, but the party seeking a recovery under the bond must bring his action in his own name. The *form* of the instrument given by the constable and his sureties is not objected to, but the prosecution of the suit in the name of the people, it is contended, is erroneous. The parties here seeking to recover had no right to sue in the name of the people; they *might* have sued in their own names, and it is insisted that they *ought* so to have sued. They had no right to bring the action in the name of the people, for by so doing they might deprive all other persons who had causes of action against the constable of the security provided for them by law. A verdict for the defendants on the plea of *non est factum* might be pleaded in bar to any subsequent suit. A judgment for the plaintiffs would be a bar to any subsequent suit, for there can be but one recovery; other action depending would be a good plea; an acknowledgment of satisfaction would forever discharge the obligors. There are no provis-

ions in the statute under which this bond was executed, regu-
lating the proceedings in suits, or prohibiting common law
defences, as where *sheriffs* are sued on their official bonds.

The verdict is not subject to the opinion of the court gen-
erally, but only so as to the questions raised at the trial. The
evidence of the acts and declarations of Williams and Mer-
rill were *not* objected to; the objection was confined to the
proof of the *insolvency* of the constable, which was an imma-
terial fact, not even noticed in the charge of the court.

*J. A. Spencer*, for the plaintiffs. On the issue of *non est
factum* the bond is proved, and on the issue of satisfaction of
the judgment the jury expressly find against it, and yet a gen-
eral verdict is rendered for the *defendants*, under a charge
from the court submitting to the jury matters not in issue by
the pleadings, although the plaintiffs on the trial had object-
ed to the introduction of any proof not warranted by the
pleadings. Such a verdict cannot be upholden; on the con-
trary, the whole case being before the court, subject to their
decision, they will render judgment fer the plaintiffs.

The evidence of the insolvency of the constable, though
in itself immaterial, was inadmissible, and most probably led
to the erroneous finding of the jury. The acts and decla-
rations of Williams and Merrill could not have misled the
sureties of the constable, and they were not entitled to be ex-
onerated on that ground from their liability. At all events,
such defence was inadmissible under the pleadings, and was
objected to on the trial.

The bond being for a beneficial and legal purpose, would
be held to be good, though not in the *terms* prescribed by
statute. 6 *Binney*, 296. 2 *Dallas*, 122, 3. 2 *Ld. Raym.*
1479. 2 *Strange*, 745, 1137. A *constable's* security in the
form of a penal bond has been adjudged to be good. 2 *Wen-
dell*, 281. 20 *Johns. R.* 74.

As to the form of the action. It is not denied that the par-
ties beneficially interested might have brought *covenant* in
their own names on the condition, but they were not bound
to do so. What objection can there be to several suits at the
same time on the same instrument? Such was the intent

of the legislature, and such intent should be enforced. To an action on such bond assigning a liability of the constable for not collecting an execution in favor of A. a recovery on the same bond where the liability assigned was for not collecting an execution in favor of B. would be no bar; whether there had been a recovery or not for the same cause of action would be tested by the *breaches* assigned.

*By the Court*, MARCY, J. A question of considerable importance in relation to suits against *constables* who have not done their duty on executions delivered to them for collection was raised on the argument.

A constable, before he enters upon the duties of his office, is required to execute an *instrument in writing* by which he and his sureties shall jointly and severally agree to pay to each and every person such sum of money as the constable shall become liable to pay on account of any execution that shall be delivered to him for collection. 2 *R. L.* 126. The statute prescribes what shall be the substance of the instrument, but is silent as to its form. This court decided as early as 1822, that a *penal bond* to the people would be a compliance with the statute. It has, however, been since decided, 2 *Wendell*, 281, that this is not the only form of the security. It may be, and perhaps it would be best that it should be, a simple agreement without any penalty, to pay to any person who might be aggrieved by the constable's neglect of duty. But the instrument on which this action is brought is in a form which has been approved by this court.

Although it is a bond given expressly to the people, yet it is contended that a suit on it cannot be maintained in the name of the people, but that the action should be covenant on the condition in the name of the party aggrieved. Covenant might undoubtedly be maintained on the bond; but it does not follow that an action in the present form cannot be sustained. It is certainly a novel objection that a suit cannot be maintained in the name of the party to whom a bond is given. The general principle is, that no other person than the obligee in the bond can be the nominal plaintiff. The

UTICA,
July, 1830.

The People
v.
Holmes.

*difficulties that have been suggested to this form of action, it* is confessed, do not exist in relation to this suit. It is not pretended that the objects to be accomplished by this prosecution cannot be as well attained by the present form of action as by any other ; but the rights that others may have under this bond, it is supposed, may be impaired by sustaining this action. When the apprehended difficulties arise, it will be time enough for us to consider how far they are well founded, and by what means they may be obviated. They cannot be alleged to defeat this action.

We are now to look into the case for the purpose of seeing what judgment is to be rendered. The verdict is subject to the opinion of this court on certain questions reserved in the course of the trial. The defendants offered to prove the insolvency of the constable Holmes, with a view, as the case states, to exonerate the bail, who, as was contended, had been lulled into security by the neglect of the plaintiffs in interest, and by their conduct as to the agency of Rathbone. This was objected to. I do not understand the objection to have been as narrow as is supposed by the counsel for the defendants. He seems to regard it as an objection only to the proof of the simple fact of the constable's insolvency ; but the grounds of the objection contained in the case shew that it was to the kind of defence which was about to be entered on. These grounds were, first, that no notice of such matter was given, the plea of *non est factum* putting in issue nothing but the execution of the bond, and the special notice alleging no such matter as was offered to be proved, and that therefore the evidence was inadmissible ; secondly, the agency of Rathbone not having been proved, but, on the contrary, disproved, that fact, being the basis of the defence, no other matter of defence was admissible ; and thirdly, the bail, not having severed from their principal in the plea and notice, could not avail themselves of a separate defence.

The two first grounds of objection are clearly not confined to the proof offered of the insolvency of the officer, but to the kind of defence which that evidence was intended to support. The matter mentioned by the plaintiff's counsel is by fair intendment to be considered the particular defence offer-

ed to be proved; that is, the alleged neglect of Williams and
Merrill, and their conduct as to the agency of Rathbone.   If
the objection extended to the kind of defence which the in-
solvency was introduced to support, and not to the proof of
the bare fact of insolvency, and that objection was overrul-
ed, the judge must be understood as deciding that such de-
fence was available to the defendants under the pleadings.
That such were his views is evident from his charge; for he
left it to the jury to say whether such defence had not in fact
been made out by the defendants.   Nothing but the execu-
tion of the bond, and the purchase by Williams and Merrill
through their agent Rathbone of the goods of Gilson sold on
the execution in their favor was put in issue, and the judge
should have confined the parties to such issue.   This he did
not do, as I understand his decision, but erred in overruling
the objection made by the plaintiffs' counsel to any other
defence, and in submitting to the jury a defence not embra-
ced in the issue.   Perhaps the fact of the constable's insol-
vency was not legitimate proof to show that the conduct of
Williams and Merrill had been such as to exonerate the bail;
and if the only ground of complaint was the improper intro-
duction of that single fact, we might probably give effect to
the verdict as found.

It is said that Williams and Merrill cannot now object to
the charge of the judge, because they took no exception to
it on the trial.   If they had stood by in perfect silence and
heard the judge submit to the jury a matter of defence which
was excluded by the pleadings, the court might not listen to
them on a motion for a new trial for that cause.   Such
however is not the predicament of these plaintiffs.   Their
counsel having objected to the defence, which was not em-
braced in the issue when it was offered to be proved, and
the judge having admitted it, an objection to the charge when
the judge submitted such defence to the jury was not re-
quired to give to the party the right to object to the charge
on this motion.   To have complained of the charge on the
trial, would have been but a repetition of an objection once
overruled; and to have urged it again, might not have been
considered perfectly respectful to the judge.

UTICA,
July, 1830.

The People
v.
Holmes.

The verdict is not, as I conceive, wholly subject to the opinion of this court ; it is so only on the several questions raised at the trial. If we decide any or all of those questions in favor of the plaintiffs, still we are not authorized to give judgment in their favor. Our decision on these exceptions may do away the verdict for the defendants : but, as I apprehend, we are without authority to substitue a verdict for the plaintiffs. I think, therefore, we can only grant a new trial.

The defendants ask for leave to amend their pleadings, so as to let in a defence, which, in the present state of the record, is inadmissible. I see no objection to permitting this to be done ; but it must be on the condition that they pay all the plaintiffs' costs since the plea and notice were put in.

New trial granted, with leave to the defendants to amend on payment of costs.