LANCASTER (UNITED STATES v.). See Cases Nos. 15,555–15,557.

---

## Case No. 8,039.

### LANDER et al. v. UNITED STATES.

[3 Betts, C. C. MS. 6.]

Circuit Court, S. D. New York. March 14, 1844.

SEAMEN—UNLAWFULLY CONFINING MASTER—EVIDENCE—NEW TRIAL.

[1. Defendant, together with others of the crew of a ship, was indicted under the act of March

---

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

3, 1835 (4 Stat. 776), for unlawfully confining the captain. The evidence showed that the captain, during a dispute between defendant and the mate, ordered the former to go to work; that he refused, and used abusive language, whereupon the captain pushed him forward to his duty; that defendant then seized the captain, and pushed him down, and when the captain arose the same performance was repeated. The court, in its charge to the jury, stated that defendant seized the captain first, and then the captain pushed him. *Held*, that this misstatement of the evidence furnished no ground for granting a new trial, for there was nothing to show that he acted in self-defense as against an assault, and the offense was proved, even though the captain did push him first.]

[2. Upon this state of facts defendant is not entitled to have the questions submitted to the jury whether the captain was not the stronger, so that defendant, and not the captain, was the one confined in the contest, or whether he was not simply holding the captain in order to get away from him.]

[3. A new trial will not be granted, as upon the ground of newly-discovered evidence, in order that defendant may avail himself of the testimony of others jointly indicted with him, who were acquitted.]

The defendant [Frederick W. Lander] was indicted at the present term, with several others [under Act March 3, 1835 (4 Stat. 776)], for unlawfully confining the master of the American barque Le Grange, on the high seas. He was tried on the 6th inst., and convicted. The other defendants were all acquitted. The defendants were also charged in the same indictment with an endeavor to make a revolt on board, and a verdict of not guilty was rendered in their favor on that charge. The testimony of the master of the vessel on the charge for confining him was that, hearing an altercation on deck forward, in the day time, between the defendant and the second mate, he walked forward, and found the two within six feet of each other. The mate ordered the defendant aloft to do some duty. The man said he would not go. The master then commanded him to go about his work, and not stand giving his officer abuse. He did not obey, but gave abusive language to the master. On that the master took hold of him, and pushed him forward to his duty, upon which he turned round, seized the master, and pushed him down. The master rose and took hold of the defendant again, and ordered him to his work, but he seized the master again, and kicked him several times, when the master got him off, and he and the second mate had a clinch and fight. The testimony of the second mate was that he and the defendant had been disputing, and were about to have a fight, when the captain came forward, and ordered the defendant to go to work. Some words ensued, and the captain caught hold of the man, and they had a struggle, in which the captain was pushed down, got up, and was pushed down again. The scuffle continued back (on the deck) about twenty feet, when the captain let go, or the defendant's neck-cloth came off. The second mate interfered, and struck

the defendant, and they had a hard fight together.

In charging the jury the court stated the evidence on this point to be that the defendant had first seized the master, but that he was clinched in the collar or neck cloth by the master subsequently; that the master was in the execution of his duty in endeavoring to repress a disturbance on deck, and compel the defendant to go to his duty; and instructed the jury that any unauthorized arrest and seizure of the master by the defendant, so as to prevent him for any period of time,. however short, having his free liberty and command on the vessel, was an unlawful confining within the meaning of the act of congress. The counsel for the prisoner requested the court to correct the statement of the evidence as to the beginning of the arrest, insisting that the testimony was that the master first seized the defendant; but the court adhered to its statement that the defendant seized the master before the latter clinched him by the collar. A motion is now made in behalf of the defendant for a new trial, because the jury were misled by the statement of the testimony given by the court; because the act of the defendant did not amount to an unlawful confining of the master, and the instruction upon the law and fact was accordingly incorrect; because the verdict was against evidence, the testimony showing it was the master who confined the defendant and not the defendant who confined the master. A certificate drawn up by the defendant's counsel and subscribed by ten of the jurors since the verdict, is also read as a farther ground for a new trial, in which they. state "that, although some of the jury were on first going out in favor of acquitting Lander (the defendant) of confining the captain, yet, under the charge of the court on the testimony, as it stood, they came to the conclusion that he should be found guilty of that charge."

BETTS, District Judge. The motion has been argued upon the assumption that there was a palpable inaccuracy in the statement of the evidence given by the court to the jury, and that the verdict was produced by that misdirection as to matters of fact. The theory of trials by jury undoubtedly demands that the jury shall decide questions of fact upon their own judgment of the evidence, and irrespective of the advice of or directions of the court, and it may be doubtful whether in the United States tribunals any redress can be offered a party against a verdict rendered in acquiescence with instructions of the court, erroneous only in the statement of the evidence, or of the conclusions to be drawn from facts in proof. [Carver v. Jackson] 4 Pet. [29 U. S.] 97; [Ex parte Crane] 5 Pet. [30 U. S.] 198. All conversant with jury trials, must often have occasion to be satisfied that practically the opinions and reasonings of the court on mere matters of fact have a controlling influence over the verdict; and that the mistake or misjudgment of the court in that particular is no less prejudicial to the party affected than if the law of the case had been incorrectly given to the jury. The supreme court of this .state seem disposed to regard it a fit reason for a new trial that the charge of the judge has a tendency to make an erroneous impression upon a jury, and to mislead them in their views of the case. Benham v. Cary, 11 Wend. 83; Utica Insurance Co. v. Badger, 3 Wend. 102; People v. Holmes, 5 Wend. 191. This appears to me a sound and proper doctrine, and one especially recommending itself to the favorable recognition of courts in cases of conviction on criminal accusations; but I do not assert that there may not be a distinction between the powers exercised by the supreme court of the United States, in reviewing the bills of exceptions, points which have arisen at the circuits, and the powers of the circuit courts in respect to those trials before themselves in which their jurisdiction is final. I can perceive no incongruity in supposing the circuit court may in criminal cases have a wider jurisdiction and discretion in ordering new trials than is possessed by the supreme court in respect to civil cases on writs of error. These suggestions are offered, not with a view of adjudicating the point, but to exempt the decisions from the inference that the court is acting under any restraint as to its competency to entertain this question, because the party might not be allowed to discuss it in the supreme court on a bill of exceptions.

Laying out of view all doubt as to the authority of this court to grant a new trial in case of conviction for a misdemeanor, because of the erroneous statement of the evidence by the court to the jury, I think this case does not possess ingredients which would allow the exercise of such power. The summary of testimony given to the jury by the court was inaccurate as to 'the order of time in which hands were laid upon each other by the master and defendant. Giving it from the impression upon his mind and without adverting to his notes, the judge overlooked the pushing of the defendant by the master, and represented the affray or contact as beginning with the seizure of the captain by the defendant. But is the variation material in fact or law in relation to this charge? There is no shadow of justification on the facts for the violence of the defendant towards the master, from the commencement to the end of the disturbance. He cannot claim to have it regarded mere self defence against the assault of the captain. No hidden attack was made upon him against which he opposed the resistance naturally to be expected when wrongfully or unexpectedly assailed. The captain came up to him ordered him to cease his altercation with the second mate, and go to his

work. This order was disobeyed, and the man turned from the mate, and directed his abusive language against the master himself. The master did not then spring upon him, or manifest any purpose to assault or punish the man, which might alarm him for the moment and put him unconsciously in a way of self defence; but took hold of him, and pushed him forward to his duty. On this he turned upon the captain and seized him. It is most manifest, therefore, that if the captain had detailed these preliminary proceedings, in the most exact manner, the instruction upon them, in point of law, must have been, that the captain was in the exercise of his lawful authority in the matter—that it was the duty of the defendant implicitly to have obeyed his orders, and his disobedience, connected with the insubordinate and insolent language authorized the use of all force necessary to bring him to obedience and that if in endeavoring to resist that force the seaman confined the master, such act would be unlawful and an offence within the statute. U. S. v. Bladen [Case No. 14,606]; U. S. v. Thompson [Id. 16,492].

The preceding particulars could accordingly have no rightful influence upon the question propounded to the jury, and to which only they were called upon to respond, whether the subsequent act of the seaman was an unlawful confining of the master. This inquiry is of a compound character, in the legal import of the terms, the definition of the offence or the construction of the statute being no less involved in it and essential to its determination than the finding of facts upon the testimony. The exposition of a statute settled by adjudication of the courts is as much a part of the law as its verbal enactments. A jury cannot disregard such interpretation. They are equally bound by it, as by the letter of the law. It is unnecessary now to say whether, for the purposes of each particular trial, the jury are not morally bound to govern their decisions by the instructions of the court on the case before them,—U. S. v. Battiste [Case No. 14,-545], U. S. v. Kessler [Id. 15,528],—because in respect to the instructions given on the meaning of this law the court is not compelled to rely upon its own judgment and exposition, but is sustained by clear and unequivocal authority.

The terms of the law as expounded having a clear and determinate meaning in relation to the seizing of the master as proved against the defendant, as will be presently shown, the jury were bound to conform their verdict to the law, no less than to the facts of the case. The idea that whether the master had not the greater physical strength, and was thereby more likely to have confined the sailor in the contest than to be confined by him, or that the defendant was only holding the master in order to get away from him, were questions of fact to be decided by the jury, and if found in favor of the accused, would supply him an adequate defence, is manifestly without foundation in law or reason. The law punishes a particular act without demanding evidence of any intent or purpose on the part of the one committing it, beyond the doing of the act itself. To assault the master with a dangerous weapon would be an offence under the crimes act, although palpably free of any purpose to commit a felony or mutiny. So to confine the master without lawful authority for so doing is a misdemeanor, consummated in doing the act, whether accompanied by an endeavor to commit a revolt or any other offence. U. S. v. Savage [Case No. 16,225]. It can accordingly be no protection to the accused to prove he had no other offence in view, and that he seized the captain only to restrain him from doing what the sailor wished to prevent. He must prove more,—that the confining was justifiable, or that it was under circumstances from which it might be supposed to be involunary on the part of the seaman. There is no color of proof to support the assertion of the defendant that he was only endeavoring to keep off the master from taking hold of him; both witnesses swear explicitly that he seized hold of the captain, and kept his hold during the scuffle; and accordingly, if the attack of the captain on him had been wanton and unjustifiable in every point of view, he would fail to show that it was necessary for him to prove in his defence for such seizure that he had done no more than was reasonable and proper to avoid the wrong attempted against him. United States v. Thompson [Id. 16,492]. But upon the testimony as it stood, showing the defendant guilty of open insubordination and insolence in favor of the master, if the master had in the first instance seized him with intent to chastise him, or otherwise by force to coerce his obedience, he could not justify turning upon the master and seizing him in such a way as to amount, within the meaning of the law, to an unlawful confinement of him. U. S. v. Thompson [supra].

In United States v. Bladen the crew had been guilty of acts of mutinous conduct, and at a subsequent day the captain ordered them aft. The defendant alleging himself sick, the captain ordered physic to be administered, which, with insolent language, he refused to take. The captain took up a chain and pushed him away, ordering him at the same time to go forward. The defendant immediately seized the captain, and got him to the quarter railing &c. Judge Washington decided that seizing the captain by the defendant amounted to an actual confinement, although the restraint continued only a moment or two; the law making no distinction as to the duration of the confinement. That the raising of the chain by the captain, and pushing the defendant from him, did not justify the defendant in seizing

the captain; it was his duty to have gone forward, as he was ordered to do, and which the act was only intended to enforce. U. S. v. Bladen [Case No. 14,606]. Judge Story upholds the same construction of the act, and says the seizing the master and holding him back against the ship's rail against his will is, in the sense of the act, a clear case of confinement of the master; and it matters not whether it was for a long or a short time, for a minute or for an hour or a day. The law looks to the fact, and not to the duration of the confinement. If the seizing of the master (in the first instance) be justifiable, and he does not exceed the chastisement which he is by law entitled to inflict, then the seaman cannot restrain him, but is bound to submit; and if he does hold the master in personal confinement or restraint, it is an offence within the statute. U. S. v. Thompson [supra].

The instructions of the court to the jury must necessarily have been the same as were given if the whole testimony had been read from the minutes, instead of presenting the substance and effect of it as understood by the court. I think, however, on a review of my notes, that the relation of the captain, the only witness who speaks of pushing the defendant forward, is, that the defendant first seized him; because he says, when he took hold of him to push him forward, the defendant turned round and seized him and pushed him down. If the jury believed that statement, it proved that the defendant was the aggressor; that he was not resisting the captain pushing him forward, but was the assailant, seizing hold of the captain and pushing him down. I am of opinion that a new trial ought not to be granted because of any misdirection of the court to the jury in the case. A new trial is also asked in this case because of newly discovered evidence or testimony, which for the first time was at the command of the defendant. This refers to the co-defendants in the indictment, all of whom are acquitted; and it is contended that he is now entitled to a new trial for the purpose of availing himself of their testimony. No decision has been found sanctioning such an application, and the instances in criminal proceeding for misdemeanors and civil actions for trespass must be numerous where some in the same prosecution are convicted and others acquitted. The want of authority in support of the motion is a forcible argument against the relief sought for, it imputing a general acceptance of the law to be otherwise partially connected with the consideration that a well established remedy is afforded when no evidence is produced against one defendant by discharging him from the indictment in order to his being a witness in the case. That was done in this case, a verdict having been taken in favor of Cottors, and he was afterwards sworn and examined as a witness for the other defendants. It is now

proposed to advance the doctrine another step, and hold that if on the ultimate hearing any others are acquitted, the convicted portion of the defendants are entitled to a new trial for the purpose of letting in their testimony. This, it appears to me, will be legislating a new principle into the law of jury trials, and I cannot discern any principle upon which it is founded. It does not assimilate itself to a case of newly discovered evidence, because the allegation is that these co-defendants were present at the time with the prisoner, and he accordingly always knew they might be witnesses in the matter. He has not discovered their presence at the time, or any facts they could prove, since his trial, but was as well informed in those particulars then as he is now. This proceeding is not necessary to protect defendants against the abuse of having their witnesses included in the same indictment with themselves; for if a grand jury are misled by the accusing proofs and bring them within the indictment, that ought not to be charged criminally; the courts have the power on proper evidence to sever the trials, and then the protection of his testimony will be secured to any party desiring it. I think this branch of the application is not sufficient to entitle the defendant to a new trial. Judgment against the motion.