## Case No. 530.

### ARKANSAS v. BALL et al.

[Hempst. 541.][1]

Circuit Court, D. Arkansas. May Term, 1847.

STATE AND STATE OFFICERS — SUIT BY GOVERNOR ON ADMINISTRATION BOND—PLEADING.

1. On an administration bond, payable to the governor by name, and to his successors in office, the suit for the benefit of the party injured must be brought in the name of the governor for the time being, and not by his style of office.

2. Although he is a purely naked trustee for any party injured, yet the legal title is in him, and he must sue.

3. A suit by the style of office, namely, "The Governor of the State of Arkansas, Plaintiff," cannot be maintained.

[At law. Action of debt on administration bond by the governor of the state of Arkansas against Bennett B. Ball, John S. Blair, and Benjamin F. Howard. Defendants demur. Demurrer sustained.]

A. Fowler, for plaintiff.

Daniel Ringo and F. W. Trapnall, for defendants, made the following points on the demurrer to the declaration:

(1.) The legal title to, or interest in, said bond is not in the plaintiff, but in the state of Arkansas, or the legal representatives of John Pope, deceased, to whom it was made payable.

(2.) That there is no such corporate being known to or recognized by law as "The Governor of the State of Arkansas," capable of suing or being sued, or of creating or receiving any obligation; but the right, if any, in the bond set forth in the declaration, is, by law, vested in the present incumbent of the office of governor, who holds the same as a naked trust, for the use of such as have been damnified by a breach of the condition. And in the name of the individual who holds the office, and not in the name of his style of office only, we presume every suit on such obligations has been prosecuted, and so the

[1][Reported by Samuel H. Hempstead, Esq.]

statutes certainly contemplated they should be prosecuted, unless, indeed, they must be sued in the name of the state, by virtue of the provisions of the 171st section of the administration law. See Rev. St. p. 59, § 15, tit. "Abatement," which shows conclusively that such suits, when brought in the name of the governor, must be in the name of the person holding the office for the time being, and not in the name of his style of office, otherwise there could be no substitution of the name of his successor, where the plaintiff dies or is removed from office as there provided.

Taylor v. Auditor, 2 Ark. 174, held that the auditor can maintain suit on sheriffs' bonds made to the governor and his successors in office, by virtue of statute of 1836; but on such bond suit in his name can be maintained, only when the state is the beneficiary, or entitled to the money recovered by the suit. This was adjudged before the taking effect of the Revised Statutes.

Phillips v. Governor, 2 Ark. 382, was instituted before the taking effect of our Revised Statutes, and not subject to the provisions of the 171st section of our administration law, as this suit is; was brought in the name of "James S. Conway, Governor, &c., as Successor of Pope," in whom, as the law then was, the legal interest in the bond was vested, as a naked trust, as Pope's successor in office, and so that suit was properly in the name of Conway; was rightly decided; and the principle there adjudged, as regards the party in whose name the suit on such bond is maintainable, rightly understood, is a direct authority against the plaintiff in this suit; as the law, when this suit was instituted, expressly required it to be in the name of the state; as the law pre-existing required it, to be in the name of the person who, at the time, was the incumbent of the office of governor. To the same effect is one of the cases read by the plaintiff's counsel from the Missouri Reports, while the others read from same book neither uphold the view of the plaintiff, nor militate against that of the defendants; but we infer that it was a suit in the name of the person holding the office of governor. The breaches assigned were various, not confined as here, simply to non-payment of the judgments, and an alleged failure to sell lands and slaves without showing the personal estate insufficient for the payment of debts —in which case only such sale is authorized.

The insufficiency of the first four breaches assigned, (each being for the non-payment of the debt allowed in favor of Pinkard & Arnold,) consists in the omission to show or set forth in any manner, the fact, that upon a settlement of their administration accounts with the county court, or any other court of competent jurisdiction, moneys sufficient to pay the debts and expenses, by law required to be paid, was at any time in the hands of administrators; that the same was

by such court appropriated to the payment of this debt; or that they were ever ordered to pay the same by such court; and neglected to pay the same within ten days after the making of such order. Until these facts are shown the administrators were not bound to pay, in fact could not pay, without taking upon themselves the whole burden and risk of adjusting the rights and priorities of all the creditors, and of making good the loss to any creditor, if, upon settlement made, the court should direct the payment to be made in a different order, or a greater or less proportion, a burden and responsibility of which the law has entirely exempted the administrator, by only requiring him to pay upon the order of the court only. And so it has been expressly adjudged by the supreme court of this state in Outlaw v. Yell, 5 Ark. 470, and against the principle of this decision, we confidently believe, no case can be found; besides it applies to proceedings under the statutes in force prior to March 20, 1839, as forcibly as to those contained in the Revised Statutes, as is manifest upon a comparison of their provisions. See Ark. Dig. tit. "Administration," §§ 28–31, 33, 43, 45, to show that the administrator shall only pay over or part with the estate upon settlement made and an order directing the appropriation thereof, whether in discharge of debts, legacies, or distributive shares; and contrast same with the corresponding provisions of the Revised Statutes, tit. "Administration," §§ 104–107, 121–124.

To show that prior to March 20, 1839, as well as subsequently, the amount recovered in any proceeding for waste, shall be appropriated for the common benefit of all the creditors, contrast sections 32, 33, 35–37, in Ter. Dig., with sections 171–173, Rev. St. The two last breaches, one for non-sale of slave, the other for non-sale of land, are respectively defective in not showing a deficiency of other personal estate to pay the debts, legally allowed, and chargeable against the administrator; without which deficiency administrators could neither sell slaves nor lands. Old. Ark. Dig. §§ 22, 26. In regard to all the questions at present presented on the demurrer, as regards the breaches assigned, the law will be found to have been substantially the same before and since the 20th of March, 1839, and the demurrer is, as we conceive and insist, in every point well taken.

Before JOHNSON, District Judge, holding the circuit court.

OPINION OF THE COURT. The only question I deem it necessary to decide on the present demurrer is, whether this suit is brought in the name of a person competent to maintain it. The declaration and writ described the plaintiff in the following manner: "The governor of the state of Arkansas, who sues for the use of Pinckard & Arnold,

&c." This suit is not brought in the individual name of the governor of the state of Arkansas, but in the manner above stated, by the style of office. The administration bond upon which the action is founded was executed to John Pope, governor of the territory of Arkansas, and his successors in office, in 1833, in accordance with the provisions of the 9th section of the territorial. act of 1825. Ter. Dig. 50. The thirty-seventh section of the same act provides that "the bond to be given by the administrator may be put in suit by the party injured in the name of the governor of the territory to the use of the party injured." Ter. Dig. 64. And the fourth section of the schedule to the constitution of Arkansas declares that all bonds executed to the governor of the territory in his official capacity shall pass over to the governor of the state and his successors in office, for the use therein expressed, and may be sued for and recovered accordingly. Rev. St. § 40.

In my judgment it is clear, that an action may be maintained if it is brought in the name of the governor of this state at the time it is commenced, and the only question is, has this suit been so brought? The plain and obvious meaning of bringing a suit in the name of a public officer is, that it shall be in the name of the individual holding the office for the time being. He is a purely naked trustee for any party injured,—a mere conduit through which the law affords a remedy. The legal title is in the officer, and in his name alone can an action at law be maintained; and to that effect are adjudged cases. Brown v. Strode, 5 Cranch, [9 U. S.] 303; Wormley v. Wormley, 8 Wheat. [21 U. S.] 421; Irvine v. Lowry, 14 Pet. [39 U. S.] 300; McNutt v. Bland, 2 How. [43 U. S.] 9. That this is the meaning of the legislature in using these terms is abundantly manifest from the fifteenth section of the Revised Statutes, under the title "Abatement," which provides that "when an action is directed or authorized by law to be brought by or in the name of a public officer, his death or removal from office shall not abate the suit, if the cause of such suit survive to his successor; but the same may be continued in the name of such successor as plaintiff therein. Rev. St. § 59. Thus showing that the suit is to be brought in the individual name of the officer and not by his style of office.

This action is brought by using the style of office and not by using the name of the officer, and it can hardly be contended that it can be maintained in its present form. This may be said to be mere technical objection as the plaintiff on the record cannot prevent the institution or prosecution of the suit, nor exercise any control over it, the real and only plaintiffs being the persons injured by a breach of the bond. To this it may be answered that the legal right to bring an action upon the bond is alone vested in the person exercising the functions of governor and his successors in office, to whom, in his individual name as governor, it is executed, and he alone or his successors in office, although naked trustees for others, can maintain an action on the bond. And this accords with the general rule of pleading, that the right of action at law is vested in the party having the strict legal title and interest. 1 Chit. Pl. 3; [Anderson v. Martindale,] 1 East. 497, 501; [Scholey v. Mearns,] 7 East, 148; [People v. Holmes,] 5 Wend. 191; [Lawton v. Erwin,] 9 Wend. 233.

I have seen no case establishing a different doctrine from that here laid down, and the cases, as for as my researches have extended, were all brought in the individual name of the officer, describing himself as holding the office. McNutt v. Bland, 2 How. [43 U. S.] 9. Demurrer sustained.

NOTE, [from original report.] The plaintiff obtained leave to amend; but subsequently dismissed the suit.