[File No. 6879]

EDWIN M. BONDE, Fred B. Bonde, Fannie E. Brownson, Flora K. Cooper, C. H. Cole, et al., Respondents, v. WILLIAM STERN and G. B. Tenneson, Appellants.

(14 NW(2d) 249)

Opinion filed April 27, 1944

*Cupler, Stambaugh & Tenneson* and *Nilles, Oehlert & Nilles,* for appellants.

*Conmy & Conmy,* for respondents.

NUESSLE, J. This action was brought to recover money judgments against the defendants. The facts set out in the complaint may be stated briefly as follows: The defendants owned some urban property in South Dakota. They wished to borrow, with this property as security. To that end, on July 20, 1928, they executed their notes or·

bonds aggregating $45,000, the bonds being for $500 each with interest at 6 per cent payable semi-annually. To secure these they executed and delivered a mortgage and trust deed covering the property in question to the Northern & Dakota Trust Company, a corporation, trustee. The bonds were sold to various purchasers. The first eighteen of the bonds were paid, together with all interest on the whole indebtedness to August, 1936. In the meantime, the defendants had parted with the title. On January 6, 1938, the remaining bonds, numbered 19 to 90 inclusive, remained unpaid and there was due on each of them $500 with interest from August 1, 1936. The defendants desiring to refinance made an agreement with the trustee, all the holders of the outstanding bonds approving and consenting thereto, whereby it was agreed that the mortgage should be foreclosed, the defendants paying part of the foreclosure expense. It was further agreed that a portion of the past due interest and certain taxes on the premises should be paid by the trustee while foreclosure was pending, and if the funds in the trustee's hands from rentals on the property were not sufficient to enable the trustee to make these paymens, the defendants would contribute the remainder. It was further agreed that if and when the sheriff's deed issued to the trustee on foreclosure, the defendants would at once pay any taxes remaining due and unpaid, and all back interest at an agreed reduced rate, and thereupon the property should be redeeded to them and they would give back a new mortgage for the outstanding obligation with interest at 4 per cent. "And that if there is any breach of this agreement by the first parties (the defendants) or of the new mortgage and trust deed to be given as herein provided the second party (the trustee) as trustee or its successor in trust, or any individual bondholder, his heirs or assigns, shall be privileged to thereupon proceed personally against the first parties or any of them, their administrators or executors, as though this agreement had not been made."

Pursuant to the foregoing agreement the mortgage was foreclosed by the trustee. Plaintiffs and the trustee did and performed all the things that were required to be done and performed by them under the terms of the agreement. The property was bid in at foreclosure sale for the full amount of the mortgage debt. No redemption was

made and the trustee took a sheriff's deed. But the defendants failed and refused to carry out the agreement, whereupon this action was begun in October, 1942, by the named plaintiffs, some thirty in number, in their own behalf and for all other bondholders similarly situated. In addition to the foregoing facts they recited in their complaint the names of the bondholders and the numbers and amounts of the bonds owned by each. They further alleged that, "the owners of bonds 19 to 90 (excepting 37, 41, 54, 80, 89 and 90) are thirty-nine or more in number and are scattered over the United States and it is impracticable to bring them all into court, and each bondholder's interest is identical and common except that some own more than one bond, so this action is brought upon the direction and consent of the bondholders' committee by the plaintiffs named, for their benefit and for the benefit of all the bondholders, and each offers upon payment of the bond or bonds owned by them with interest or any judgment herein rendered for such principal and interest to assign or convey their interest in the real property now owned by Allan Williamson, trustee." (Williamson had superseded the Northern & Dakota Trust Company as trustee.)

Their prayer for relief was that "each individual plaintiff demands judgment against the defendants and each of them for the principal amount of each bond or bonds owned by them, with interest at 2 per cent per annum from August 1, 1936 to August 1, 1938, and with interest at 6 per cent per annum from August 1, 1938 and for their costs and disbursements, and that a judgment be rendered in favor of each of the bondholders for the principal amount of each bond or bonds owned by them with interest at 2 per cent from August 1, 1936 to August 1, 1938, and with interest at 6 per cent from August 1, 1938 upon their becoming active plaintiffs in this suit before judgment or upon their later application to become plaintiffs and have judgment, and for such other and further relief as may be just and equitable."

To this complaint the defendants demurred on the grounds, (1) that several causes of action were improperly united therein, and (2) that the complaint did not state facts sufficient to constitute a cause of action. The second ground of demurrer was later abandoned, the defendants conceding the complaint stated a cause of action. But the

defendants stood upon the first ground of demurrer, to wit, that several causes of action were improperly united in the complaint.

The defendants, in support of their demurrer, contend that the complaint sets forth facts constituting divers causes of actions at law, and that there is a misjoinder of such causes of action for the reason that the obligations on which recovery is sought are not jointly owned but are separately owned by the different plaintiffs, and therefore the complaint is subject to challenge by demurrer pursuant to § 7442, Comp. Laws 1913, providing that a defendant may demur to a complaint when it appears upon the face thereof that several causes of action have been improperly united. On the other hand, plaintiffs insist that the action is one in equity; that full and complete relief can not be had without the exercise and application of equitable principles; that, therefore, the action is properly brought pursuant to the provisions of § 7406 of the Code of Civil Procedure, Compiled Laws 1913.

The court overruled the demurrer. Whereupon the defendants perfected the instant appeal from the order overruling the same.

Much attention is devoted by the respective parties to the question as to whether the instant case is an action at law or a suit in equity. We are of the opinion, however, that this question is immaterial here. Our Code of Civil Procedure makes it so.

Section 7355 Comp. Laws 1913, provides:

"The distinction between actions at law and suits in equity and the forms of all such actions and suits heretofore existing are abolished; and there shall be in this state hereafter but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a civil action. . . ."

Consistent with the foregoing declaration it is further provided:

Section 7403.

"All persons having an interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs except as otherwise provided in this chapter."

Section 7406.

"Of the parties to the action those who are united in interest must be joined as plaintiffs or defendants; . . . and when the question is one of a common or general interest of many persons, or when the

parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole."

Section 7439.

"All forms of pleading heretofore existing are abolished; and hereafter the forms of pleadings in civil actions in courts of record and the rules by which the sufficiency of the pleading is to be determined are those prescribed by this code."

Section 7466.

"The plaintiff may unite in the same complaint several causes of action, whether they are such as have been heretofore denominated legal or equitable, or both, where they all arise out of:

1. The same transaction, or transactions connected with the same subject of action; or

.    .    .    .    .    .    .    .    .    .    .

But the causes of action so united  .  .  . must affect all the parties to the action, and not require different places of trial, and must be separately stated."

Section 7679.

"Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and the court may determine the ultimate rights of the parties on each side as between themselves. . . ."

The foregoing sections were enacted in almost identically their present forms as parts of the Dakota Code of Civil Procedure, whence we inherited them, by the Territorial Legislature in 1868. The title and preamble to the Code of Civil Procedure then adopted for the Territory of Dakota, read:

"An Act to Simplify and Abridge the Practice, Pleadings and Proceedings of the Courts of This Territory:

"Whereas, it is expedient that the present forms of actions and pleadings in cases at common law should be abolished, that the distinction between legal and equitable remedies should no longer continue, and that an uniform course of proceeding, in all cases, should be established; therefore,

"Be it enacted  .  .  ."

This Code was enlarged and re-enacted by the Territorial Legislature in 1877. Its progenitor was the Code of Civil Procedure of the State of New York, long in effect at the time of its adoption by the Territorial Legislature. A reading of the Code, and particularly of the several sections heretofore quoted, clearly evidences a legislative intention, not only to prescribe a uniform course of procedure by doing away with the then forms of actions and pleadings in cases at common law, but also to make available in all cases, whether at law or in equity, the broader equitable rules then prevailing. Such has been the conclusion of the courts generally in proceedings under the new Code of Civil Procedure. And the early New York cases so viewed the provisions of the new Code. See McKenzie v. L'Amoureaux, 11 Barb. 516, decided in 1851. In this case the court was considering § 119 of the New York Code, identical with our § 7406, supra. The court held that the purpose of this section was to retain "in the new practice the same rules by which to determine whether the proper parties were before the court which then prevailed in the court of chancery. The section in question requires that, except in a specified case, all who are *united in interest* shall· be joined as parties; and then declares that when the action involves a question of *common or general interest* to several parties, *or* when, though united in interest the parties are very numerous and it is impracticable to bring them all before the court, then one or more may sue or defend for all." Likewise, in Loomis v. Brown, 16 Barb. 325, decided in 1853. In this case an action was brought by Loomis and others against Brown and others for money judgments on an undertaking entered into on the granting of an injunction. The claims of the several plaintiffs were wholly different and distinct. The defendants demurred to the complaint on the ground that there was an erroneous joinder of the plaintiffs in that the claims were distinct and separate arising out of the separate natures of their interests. The court, in overruling the demurrer, said: "The covenant is joint, and when that is so, it is said the covenantees may sue jointly. People v. Holmes, 5 Wend. 191, 197; Watts v. Sanders, 10 B Mon 372; Platt, Covenants 130. However that may be, we are now to determine this question, as it arises under the Code of Procedure, which abolished all distinctions between the forms of pro-

ceeding in actions at law and suits in equity. With the view of embracing all cases, whether of law or equity, and of making them conform to one general rule, the code provides in the 117th section (our § 7403, supra) that 'all persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this title.' This is now the rule in all cases, whether such as were formerly the subjects of suits in equity or of actions at law; and we are to administer it according to its spirit and true intent, however the practice may differ from the rule that heretofore has prevailed in actions at law. It is only necessary to advert to the fact that the rule prescribed by the code is applicable to all suits, and then consider the identity of the rule the code has adoped for the joinder of plaintiffs, with the rule as it prevailed in equity, to be convinced that we are now to hold the same rule applicable to both. In Mitford's Pleading, it is said to be the constant aim of equity to do complete justice by settling the rights of all persons interested in the subject of the suit. . . . We think it was the manifest intent of the legislature to make a change in relation to parties in suits at law, and to assimilate the practice in that respect to the practice that had before then prevailed in courts of equity. . . ."

And again, in Kirk v. Young, 2 Abb Pr 453, decided in 1856, the court said: "The language of § 119 of the Code is too unequivocal and broad to admit of any doubt that the legislature intended that when the parties 'are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole' whether the action would have been, under the old system, legal or equitable. Those distinctions, as two separate systems of procedure, are abolished by the Code; and all the provisions of the Code are applicable to every action, *without reference to those distinctions.*"

In New York & N. H. R. Co. v. Schuyler, 17 NY 592, decided in 1859, a demurrer was interposed to the complaint on the ground of misjoinder of causes of action. The court, overruling the demurrer, said concerning the amendment to the Code of Civil Procedure providing that the plaintiff may unite in the same complaint several causes of action, whether they be such as have heretofore been denomi-

nated legal or equitable, or both, where they all arise out of the same transaction or transations connected with the same subject of action. "This amendment, therefore, was not designed to introduce any novelty in pleading or practice. Its language is, I think, well chosen for the purpose intended, because it is so obscure and so general as to justify the interpretation which shall be found most convenient and best cal-culated to promote the ends of justice. It is certainly impossible to extract from a provision so loose and yet so comprehensive any rules less liberal than those which have long prevailed in courts of equity."

The sum of the holdings in these cases is that the provisions of the Code of Civil Procedure, with which we are here concerned, are enact-ments of rules of equity pleading and are applicable in all actions whether at law or in equity. And when a question arises as to their use, construction or application, equitable precedents may be looked to for guidance.

Of course it must be presumed that when the Territorial Legislature adopted the New York Code, it adopted it with the construction there-tofore put upon its provisions by the courts of that state. Cass County v. Security Improv. Co. 7 ND 528, 75 NW 775; State ex rel. McCue v. Blaisdell, 18 ND 31, 119 NW 360; Severtson v. Peoples, 28 ND 372, 148 NW 1054. And on those occasions when we have passed upon questions touching the construction of the provisions of our Code of Procedure, our holdings have been wholly consistent with the con-clusion we derive from the New York cases as stated above. See Black v. Minneapolis & N. Elevator Company, 7 ND 129, 73 NW 90; Bed-dow v. Flage, 22 ND 53, 132 NW 637; Stark County v. Mischel, 33 ND 432, 156 NW 931; Kvello v. Lisbon, 38 ND 71, 164 NW 305; Varnes v. Schwartz, 50 ND 511, 197 NW 129; Ulness v. Dunnell, 61 ND 95, 237 NW 208, 18 Am Bankr Rep (NS) 199.

The instant action is representative but not derivative. The named plaintiffs bring it in their own behalf and on behalf of others similarly situated. The prayer of the complaint is for several judgments in the amounts evidenced by the notes held by the various named plaintiffs, and those unnamed who may ask for judgment. The plaintiffs say they are warranted in thus bringing it pursuant to the equitable rules embodied in §§ 7406 and 7466, supra, and in demanding judgment

as they do, pursuant to the provisions of § 7679, supra. They contend that though the plaintiffs may have several causes of action as against the defendants, they are very numerous and have a common and general interest in the questions of law involved and in the relief demanded, and that, in addition thereto, all of them have an interest in the subject of the action.

It therefore becomes necessary to consider the allegations of the complaint, all of which are admitted by the defendants' demurrer, and to then say whether under the Code provisions and pursuant to the practice as shown by equitable and other precedents their position is well taken.

It appears from the allegations of the complaint that plaintiffs' causes of action arise from the breach of the agreement made with the defendants on January 6, 1938. It is true the defendants contend that the action is not predicated on the agreement of January, 1938 but on the original notes. But it is clear to us that there is no ground for this contention. If this is not so, the complaint fails to state a cause of action. The plaintiffs originally held the bonds or notes of the defendants. The mortgage securing these notes was foreclosed. The property was bid in for the full amount of the debt secured thereby. Unless the agreement saves it the obligation was thus extinguished and the plaintiffs are through so far as the defendants are concerned. But, by their breach of the agreement in failing to comply with the conditions which induced the foreclosure and under which the foreclosure was had and the security bid in, the defendants resuscitated the obligation and again became liable in the amounts evidenced by their notes held by the several plaintiffs. To say otherwise would be to countenance and reward unfaith and trickery. This being so the rights of the plaintiffs which pursuant to the agreement are several arise out of the breach of the same contract and the relief is in each case identical with that of all the others, to wit, damages in the amounts of the notes held, the only difference and distinction being that the amounts of the several judgments sought by the plaintiffs will be different as their notes differ in amounts. Certainly, the bringing of one action in manner and form as the instant action was brought will not only lessen the costs to the plaintiffs, to say nothing of the defendants, but it will light-

en the labors of the court and the expense to the public that must bear the burden of maintaining the court. Equity always has sought to avoid multiplicity of suits, and to "do complete justice by settling the rights of all persons interested in the subject of the suit." Clearly, such also must have been the legislative purpose in enacting the provisions of the Code of Civil Procedure. Furthermore, we can see no practical reason why such a procedure should not be followed here. No added burden is imposed on the defendants—rather, a benefit. It does not appear that there is any defense to any of these note obligations. And, if there be, there is no reason why the issues thus arising cannot well be tried, either simultaneously with the others, or separately if, in the judgment of the court, that should be the advisable thing to do. There can be no difficulty on the score that several judgments must be entered—one for each of the plaintiffs who is entitled to judgment. The statute, § 7679, supra, providently takes care of that possibility by providing that judgment may be given for or against one or more of several plaintiffs and for or against one or more of several defendants, and the court may determine the ultimate rights of the parties on each side as between themselves. Clearly, another enactment of an equitable rule consistent with the declared purpose and with the other provisions of the code. Our conclusion is that viewing the complaint in the light of equitable procedents, where the rules embodied in the Code of Civil Procedure were formulated and applied, it is not subject to the challenge interposed and the demurrer must be overruled.

We know many cases may be found that are not in accord with our conclusion as above set forth, but we think the great weight of authority sustains it. See Pomeroy's Equity Jurisprudence, 5th ed §§ 269 et seq, where the authorities pro and con are reviewed and considered, and where it is said: "Under the greatest diversity of circumstances, and the greatest variety of claims arising from unauthorized public acts, private tortious acts, invasion of property rights, violation of contract obligations, and notwithstanding the positive denials by some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised, either on behalf of a numerous body of separate claimants against a single party, or on behalf of

a single party against such a numerous body, altho there is no 'common title' nor 'community of right' or of 'interest in the subject-matter' among these individuals, but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body. In a majority of the decided cases, this community of interest in the questions at issue and in the kind of relief sought has originated from the fact that the separate claims of all the individuals composing the body arose by means of the same unauthorized, unlawful, or illegal act or proceeding. Even this external feature of unity, however, has not always existed, and is not deemed essential. Courts of the highest standing and ability have repeatedly interfered and exercised this jurisdiction, where the individual claims were not only legally separate, but were separate in time, and each arose from an entirely separate and distinct transaction, simply because there was a community of interest among all the claimants in the questions at issue and in the remedy." We quoted and approved the foregoing statement by Professor Pomeroy and applied its rule in Kvello v. Lisbon, supra. It is true that in the Kvello case equitable relief was sought, but that can make no difference since, as we have shown, the legislative purpose evidenced when the Code of Civil Procedure was adopted was "that the distinction between legal and equitable remedies should no longer continue, and that an uniform course of proceeding, in all cases should be established." See, also, in this connection, the very interesting and informative article "Bills of Peace With Multiple Parties" by Professor Zechariah Chafee, Jr. 45 Harvard L Rev p. 1297.

It may be well to note in connection with our holding here the case of Atkins v. Trowbridge, 162 App Div 629, 148 NYS 181. This case was, in many respects, very like the instant case. It was brought in the same manner under an identical procedural statute and the plaintiffs had judgment. The judgment was later reversed but not on the ground that there was a misjoinder of parties or causes of action. The action was brought as "an action at law by representatives of holders of securities of a railroad in behalf of themselves and all others who shall come in and be made parties thereto, against a banking

company, to recover money damages for its refusal to carry out a contract to purchase mortgage bonds of a railroad corporation which it was proposed to organize to take over and operate the railroad in which the plaintiffs were interested." The court said in that part of the opinion to which we here particularly call attention:

"The only theory upon which a recovery could be had at the suit of individual bondholders was that each bondholder who subscribed to the reorganization agreement had created the reorganization committee his agent to do certain things, including the making of a contract for the underwriting of the proposed bond issue, and that Vermilye & Co. in contracting with the committee, knowing it to be the agent of the bondholders, had in effect contracted with each bondholder that it would purchase his bonds, and thus make possible the reorganization which was to impart a value to his securities. Hence, each assenting bondholders has a personal cause of action, if any had, for his damages resulting from the failure of Vermilye & Co. to perform its agreement with him. The assenting bondholders were very numerous, and the question of the liability of Vermilye & Co. for damages was one of general interest to all of them. The case was, therefore, brought within that provision of § 448 of the Code of Civil Procedure reading as follows: 'And where the question is one of a common or general interest of many persons; or where the persons who might be made parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.' While this section would seem to justify the plaintiffs in bringing this action in their own behalf and in behalf of others similarly situated, it does not determine the nature of the judgment which should have been entered, nor who is entitled to participate in its results."

The order appealed from is affirmed.

BURKE, and BURR, JJ., concur.

MORRIS, Ch. J. (dissenting). This is an action brought by some 30 named plaintiffs "for themselves and for all others similarly interested" to recover several separate and individual judgments against the de-

fendants. The complaint sets forth the execution of a trust deed on certain real property for the purpose of securing 90 negotiable bonds all of which were sold to individuals but only 18 were paid. The defendants who executed the bonds and trust deed defaulted. The defendants and the trustee under the trust deed then entered into an agreement, a copy of which is attached to the complaint as a part thereof whereby it was agreed that the property should be foreclosed upon and certain payments made and things done by the defendants for the benefit of the plaintiffs. This agreement provided:

"It is further specifically understood and agreed that this agreement shall not be construed to release first parties, their heirs, legatees, executors or administrators from their joint and several personal obligations to second party as trustee, or its successor in trust, and the owners of the bonds now outstanding under the Trust Deed of July 20, 1928, their heirs or assigns, and that if there is any breach of this agreement by first parties, or of the new mortgage and trust deed to be given as herein provided, second party, as trustee, or its successor in trust, or any individual bondholder, his heirs or assigns, shall be privileged to thereupon proceed personally against first parties, or any of them, their administrators, or executors, as though this agreement had not been made."

The complaint then alleges that the defendants breached the agreement and refused to perform their obligations thereunder and that the bonds numbered 19 to 90 inclusive in the amount of $500 each are past due and:

"That the owners of Bonds 19 to 90, (except Nos. 37, 41, 54, 80, 89 and 90) are thirty-nine or more in number and are scattered over the United States and it is impracticable to bring them all into court, that each bond holder's interest is identical and common except that some own more than one bond, so this action is brought upon the direction and sanction of the bond holders committee by the plaintiffs named, for their benefit and for the benefit of all the bond holders, and each offers, upon payment of the bond or bonds owned by them, with interest, or any judgment herein rendered for such principal and interest to assign or convey their interest in the real property now owned by Alan Williamson, Trustee."

The question before us is whether the plaintiffs may properly join in this action, the causes of action pleaded.

Section 7403, N. D. Comp. Laws 1913 provides:

"All persons having an interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs except as otherwise provided in this chapter."

In Pomeroy's Code Remedies, § 200, we find this statutory provision discussed in the following language:

"Persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs in all actions, whatever be their nature, although the rights of such persons are *legally* several, and although at the common law they would be required to institute separate actions; or, in other words, the plain import of the legislation—its language not being confined to any class of suits—is to enlarge the number of cases in which persons may be joined as coplaintiffs, and to place legal actions in this respect upon exactly the same footing as those which are equitable in their nature."

From both our statute and the quotation from Pomeroy it appears that in order for two or more plaintiffs to join in an action two things are required. All persons thus joined must have (1) an interest in the subject matter of the action (2) an interest in the relief demanded. If both elements are present, the plaintiffs may join although their rights are legally several.

"But, to justify joining parties as plaintiffs in an action, there must be some community of interest in the particular claim pressed for adjudication, and some common benefit or advantage in the relief sought. As observed in Martin v. Davis, 82 Ind 38: 'To entitle two or more persons to join as plaintiffs, it is not sufficient that they each have a cause of action arising out of the same transaction or matter, if the relief sought by each be distinct and unconnected. The plaintiffs must have a common interest in the subject of the action and in the relief. Each must be interested in the relief sought by the other.'" Miller v. Hawkeye Gold Dredging Co. 156 Iowa 557, 137 NW 507. See also Bates, Pleading, Practice Parties & Forms, 4th ed § 64.

The majority opinion takes the view that the pleading of the agreement made between the defendants and the trustee, which all bondhold-

290

ers approved, constitutes the subject of the action or at least an important part thereof and being common to all of the plaintiffs, is sufficient ground for sustaining a joinder. With this conclusion, I am unable to agree. The basis of this action as pleaded in the complaint is the bonds held by the individual plaintiffs. The agreement from which we have quoted specifically provides that in event of its breach the bondholders would be privileged to proceed personally against the defendants as though the agreement had not been made. It is the evident theory of the complaint that since the agreement was breached the plaintiffs were proceeding in accordance with that provision. This construction is borne out by the relief sought which is an individual judgment in favor of each plaintiff named and also in favor of each of the other bondholders upon their becoming active plaintiffs in the suit before judgment or upon later application. No common relief is sought. The relief demanded springs from the bonds and not the agreement and being individual in its nature the plaintiffs do not qualify in either of the two respects required by § 7403, supra. They do not have a common interest in either the subject of the action or in the relief demanded.

The demurrer does not present a question of misjoinder of parties plaintiff. Olson v. Shirley, 12 ND 106, 96 NW 297; Bruffarts v. Ober, 48 ND 997, 188 NW 174. However, the foregoing discussion bears upon the application of § 7466, N. D. Comp. Laws 1913 to the complaint involved in this case. This section provides that:

"The plaintiff may unite in the same complaint several causes of action, whether they are such as have been heretofore denominated legal or equitable, or both, where they all arise out of:

1. The same transaction, or transactions connected with the same subject of action; or

2. Contract, express or implied; or ". . . *But the causes of action so united* must all belong to one of these classes and, except in actions for the foreclosure of mortgages, *must affect all the parties to the action,* and not require different places of trial, and must be separately stated."

The causes of action that may be joined under the statute must not only fall within the several specific categories therein set forth but each

cause of action must affect all of the parties. In this case each cause of action affects one plaintiff and both defendants but does not affect the other plaintiffs named or unnamed.

"The general rule requiring that all causes joined affect all the parties is applicable under the code practice. It is a prerequisite, even in the code states, to the joinder of causes of action that all causes should affect all parties to the action, both parties defendant and parties plaintiff. In fact, most of the codes in terms require, that the different causes of action united, except as otherwise provided, 'must affect all the parties to the action.' Under such provisions, causes of action against the same defendant which affect the several plaintiffs separately and distinctly, even though they may have arisen out of the same transaction or relate to the same subject-matter, cannot be joined." 1 Am Jur 466, Actions, § 79.

This court has construed the Code of Civil Procedure with prodigious though meritorious liberality. In carrying out that policy we must endeavor to keep the judicial house in order. To that end the legislature has wisely enjoined that except in actions for foreclosure of mortgages, causes of action to be joined must affect all of the parties to the action. The complaint violates that injunction. The demurrer should have been sustained.

CHRISTIANSON, J. (dissenting). I agree with the views expressed by Chief Justice Morris, but am constrained to make the following comment:

The complaint alleges that on or about July 20, 1928 the above named defendants executed and delivered ninety notes or bonds, each in the amount of five hundred dollars, or forty-five thousand dollars in all; that to secure the payment of such notes or bonds they executed and delivered a trust deed on certain real property. A copy of such bond or promissory note is attached to and made a part of the complaint. Such bond contains an unconditional promise by the makers thereof to pay a certain sum of money, at a fixed future time to bearer, or the registered owner of the bond. The bond contains among others the following provision: "The liability of the undersigned hereon shall under all circumstances whatsoever, continue in its original force

until the principal and interest are paid in full." All the bonds were sold for value to a number of individuals. Eighteen of the bonds were paid, and on January 6, 1938, seventy-two of the bonds remained outstanding, on which interest payments were in default—interest being due thereon from and after August 1, 1936.

On January 6, 1938 the defendants, the makers of the bonds, and the trustee named in the trust deed entered into the written agreement, referred to in the majority opinion and also in the dissenting opinion of the Chief Justice, a copy of which agreement is attached to and made a part of the complaint.

The agreement provided that upon approval thereof by the owners of the bonds, the trustee should proceed with the foreclosure of the trust deed, and that all the expense of the foreclosure, with the exception of seventy-five dollars, should be paid by the defendants. It further provided that a portion of the past due interest and certain taxes should be paid by the trustee from moneys in its possession that had been received as rental, and that if the funds in the trustee's hands were not sufficient to enable the trustee to make such payments, that then the makers of the bonds would pay to the trustee the additional amount required. It further provided that if and when sheriff's deed was issued to the trustee on foreclosure, the makers of the bonds would pay any taxes remaining due and unpaid and all back interest at the rate of four per cent per annum, and that the trustee would then transfer the real property to the makers of the bonds (the defendants) "or the survivors of them then living," and that the said makers of the bonds would thereupon make and execute to the trustee, or to such other trustee as the majority of the bonds outstanding under the trust deed should select, "their joint and several obligation, in amount $36,-000.00, in units or bonds of $500.00 each, secured by a mortgage on the property herein described."

The agreement also contained the provision quoted in the dissenting opinion of the Chief Justice, whereby it was specifically stipulated that the agreement should not be construed to release the makers of the bonds, their heirs, legatees, executors, or administrators from their joint and several personal obligations to the owners of the bonds then outstanding under the trust deed of July 20, 1928, and "that if there

is any breach of this agreement by first parties or of the new mortgage and trust deed to be given as herein provided, . . . any individual bondholder, his heirs or assigns, shall be privileged to thereupon proceed personally against first parties, or any of them, their administrators, or executors, as though this agreement had not been made."

It is alleged that the defendants breached the agreement and refused to perform their obligations thereunder, and that all the bonds, numbered 19 to 90 inclusive, each in the amount of $500.00, are past due, and that "there is now due on each bond the sum of $500.00, with interest, etc." The agreement of January 6, 1938, does not provide for surrender of the bonds issued in 1928 by the holders of such bonds, and the acceptance of new bonds in exchange and discharge thereof. It was clearly the understanding of the parties to the agreement that the holders of the then outstanding bonds should retain such bonds notwithstanding the issuance of new bonds, as the agreement provides not only that the owner of any such bond shall have the right to proceed personally against the makers of such bond in case "there is any breach of this agreement by first parties" (the makers of the bonds), but that the owner of such bond shall have the right to so proceed and enforce the personal obligation of the makers "if there is any breach of . . . the new mortgage and trust deed to be given as herein provided."

In this action there are 30 named plaintiffs, who according to the title of the action and the allegations of the complaint are suing "for themselves and for all others similarly interested." According to the allegations of the complaint the 30 named plaintiffs are the owners of 49 of the bonds; five persons who owned six of the bonds have sold the same to the defendant, Stern; and the remaining seventeen bonds are owned by twelve persons, who are not named as parties to the action, and, hence, must be those whom the named plaintiffs intended to include in the designation "all others similarly interested."

The complaint obviously sets forth facts showing a cause of action in favor of each of the named plaintiffs and against the defendants. The holder of each bond has a separate cause of action upon the personal obligation of the makers. Such cause of action is in no manner affected by the cause of action of the owner of some other bond. The

amount payable by the makers of the bonds pursuant to their personal obligation to the owner of one bond is in no way dependent upon what is due from them upon their personal obligation to the owner of another bond. Each owner has a separate individual right against the makers upon the personal obligation to him. Kelley v. Gill, 245 US 116, 120, 62 L ed 185, 188, 38 S Ct 38, 40 Am Bankr Rep 421. There is no joint or common interest in the payment, which the makers of the bond have personally obligated themselves to make. Nahte v. Hanson, 106 Minn 365, 366, 119 NW 55.

A separate money judgment is demanded in favor of each plaintiff for the amount due from the defendants upon their personal obligation to such plaintiff. If judgments are obtained there will be no common interest in the judgments; each judgment will belong solely to the plaintiff who as owner of a particular bond or bonds is awarded recovery thereon.

There is not a suggestion that it is sought to enforce the written agreement of January 6, 1938 or to recover damages for breach thereof. The amount sought to be recovered by each plaintiff is the amount which it is alleged is due upon the bond or bonds owned by him. The trustee, who is one of the parties to the agreement of January 6, 1938, is not even made a party to the action. No right or interest of the owner of any bond can be affected in any manner by the success or failure of the owner of any other bond. No right or interest of the owner of a bond can be affected by whether the owner of any other bond brings action to recover the amount due on the bond, or whether he brings action to recover damages for the breach of the agreement of January 6, 1938, or whether he brings action at all.

In my opinion our laws do not authorize joinder of actions such as has been attempted here. Section 7403, Comp. Laws 1913 limits the union of parties as plaintiffs to those "having an interest in the subject of the action and in obtaining the relief demanded." Under this section, "all who would unite must be interested in the subject of the action and in the relief." Though one may be interested in the matter or thing concerning which the action is brought, "unless he is also interested in the relief which is sought by another, he is not permitted to unite with him." Bliss, Code Pleading, 2d ed, § 76. Here

each plaintiff seeks separate and individual relief. As was well said by the Chief Justice in his dissenting opinion in this case: "No common relief is·sought. . . . They (plaintiffs) do not have a common interest in either the subject of the action or in the relief demanded."

Section 7466, Comp. Laws 1913, (relating to Joinder of Actions), in harmony with § 7403, supra, provides that in order to be united in the same complaint, the causes so united "must affect all the parties to the action."

Under this section, "separate causes of action against the same defendant in favor of several persons cannot be united, even though their causes of action arise out of the same transaction." 14 Standard Enc. of Procedure, pp 677, 678; 1 Am Jur 466, Actions, § 79; Noroian v. Bennett, 179 Cal 806, 179 P 158; 1 CJS pp 1274 et seq.

The limitations on the joinder of actions prescribed by § 7466, supra, are not removed by the proviso in § 7406, Comp. Laws 1913, that "when the question is one of a common or general interest of many persons, or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole."

Said § 7406, supra, does not relate to joinder of causes of action; it relates to parties. It was not intended by this section to provide for the joinder in one action of separate causes of action owned by different plaintiffs against a common defendant. Brenner v. Title Guarantee & T. Co. 276 NY 230, 11 NE(2d) 890, 114 ALR 1010; Pemberton v. Board of Education, 67 Ohio App 175, 36 NE(2d) 170. See also Rogers v. Boston Club, 205 Mass 261, 91 NE 321, 28 LRA(NS) 743; Burke v. Scheer, 89 Neb 80, 130 NW 962, 33 LRA(NS) 1057; Kelley v. Gill, 245 US 116, 62 L ed 185, 38 S Ct 38, 40 Am Bankr Rep 421; Van Auken v. Dammeier, 27 Or 150, 40 P 89.

The rule embodied in said § 7406, supra, "is in harmony with the requirement that all the parties plaintiff must have a joint or common interest, and the interest of the parties represented must appear to be such·as to entitle them, were they all before the court, to maintain the action in thir own names." Bliss, Code Pleading, 2d ed p 121.

"The right which the suit is brought to assert must in some manner or degree belong to all who are represented by the actual plaintiff; and

all the persons who are represented by the actual defendant must have some interest adverse to the demand for relief set up by the action." Pomeroy, Code Remedies, 5th ed, p 441.

As said in the majority opinion, § 7406, Comp. Laws 1913 was borrowed from New York. In construing and applying such provision in the Code of New York (Brenner v. Title Guarantee & T. Co. 276 NY 230, 18 NE(2d) 890, 114 ALR 1010, supra), the New York Court of Appeals said:

"Its purpose was not to provide for the joinder in one action of separate causes of action owned by different plaintiffs. Its purpose was rather to retain 'in the new practice the same rules by which to determine whether the proper parties were before the court, which then prevailed in the court of chancery.' McKenzie v. L'Amoureaux (1851) 11 Barb. 516, 518. In those cases where it applied, one person may prosecute a cause of action or interpose a defense for the benefit of others, who are not parties to the action, but only where they might properly be joined as parties because they have a common or general interest or are united in interest."

There is no common or general, or union of, interest on the part of the several plaintiffs in the several individual causes of action which it is sought to unite in the complaint in this case.

As said, according to the allegations of the complaint the 30 named plaintiffs are the owners of 49 bonds. But they are not joint owners, they are several owners, each of his own. The cause of action in favor of the owner and against the makers of each of the several bonds upon the promise to pay is not joint, and does not belong to the owners of all the bonds. There is a separate written agreement to pay between the makers, and the owner, of each bond. The owner of each bond has a cause of action for the breach of the personal obligation of the makers, and the owners of the other bonds have no interest therein. If the owner of a bond brings action against the makers of the bond for breach of their agreement to pay, the owners of other bonds will not be necessary parties to such suit.

Here 30 persons, owning separate and individual causes of action against two common defendants seek to join them in one action. There is no warrant under the laws of this state for such joinder.