Joe MADER, Sr., and Viola Mae Mader,
Plaintiffs and Respondents,

v.

Gottfried HINTZ, Arthur Tietz, and Murlin
M. Hintz, Defendants and Appellants.

Civ. No. 8566.

Supreme Court of North Dakota.

May 7, 1971.

As Corrected Aug. 6, 1971.

M. Hintz, as purchasers, to reform a contract for deed relating to certain premises known as "Mader's Trailer Court" in the outskirts of Bismarck, and to cancel the contract for failure of the purchasers to make payments. The appellants counter-claimed for recovery of all payments made and for the value of improvements made by them, claiming that they had rescinded the contract by reason of the alleged unmarketable condition of the title to the premises. The district court ordered the contract for deed reformed with respect to the description of the premises and ordered cancellation of the contract for failure to make payments, and provided for a ninety-day period of redemption. The appellants appealed from the judgment entered and demanded a trial de novo in this court.

On July 17, 1959, the parties entered into an earnest money contract for the sale and purchase of the trailer court, a tract comprising 3.84 acres, describing it as follows:

> "The Mader's Trailer Court located in Section 5, Township 138 North, Range 80 West of the 5th PM consisting of approximately five and one-half acres more or less and being located South and East of the Missouri River Bridge in Burleigh County, North Dakota."

The earnest money contract set forth the purchase price of $100,000.00, and terms of payment, and acknowledged receipt of $1,000.00 as the earnest money consideration. The earnest money contract also provided as follows:

Milton K. Higgins, Bismarck, for defendants and appellants.

Rausch & Chapman, Bismarck, for plaintiffs and respondents.

EUGENE A. BURDICK, District Judge.

This is an action brought by the respondents, Joe Mader, Sr., and Viola Mae Mader, as vendors, against the appellants, Gottfried Hintz, Arthur Tietz and Murlin

> "It is further agreed that on the 24th day of July, 1959, and upon payment of the sum of $24,000.00, above mentioned, the parties hereto will enter into a contract for deed covering and concerning said sale and purchase, and further providing for a delivery of warranty deed by parties of the first part upon full payment of the purchase price by parties of the second part;"

The earnest money contract is silent as to the quality of the title to be delivered upon

performance of the contract; neither did it provide for the furnishing of an abstract of title.

On July 24, 1959, conformable to the earnest money contract, the parties executed a contract for deed covering:

"The following described premises situated in the City of Bismarck in Burleigh County, North Dakota, namely: A tract of land lying in the Northwest Quarter of Section 5, Township 138 North Range 80 West and in the Northeast Quarter of Section 6, Township 138 North Range 80 West of the 5th PM that is described as follows:"

The description then continues by metes and bounds which failed to describe the premises intended by both parties to be the subject of the contract. Unaware that the metes and bounds description of the premises was confusing and inaccurate, the purchasers caused the contract to be recorded in the office of the register of deeds of Burleigh County on the 17th day of August, 1959.

The contract for deed also contained the following provision:

"At the time of the execution and delivery of this agreement, said parties of the first part promise and agree to furnish at their own expense, to said parties of the second part an abstract of title to said property showing a good and marketable title thereof in said parties of the first part, free of all incumbrances as of the date of this agreement, except special assessments that have not as yet been annually levied and annually included in the yearly taxes against said property for public improvements heretofore made."

The purchasers paid the $24,000.00 balance of the down payment upon execution of the contract for deed, and on August 1, 1959, as provided in the contract for deed, went into possession of the premises and continued in uninterrupted possession until about three weeks after giving "Notice of Rescission by Purchaser" on December 11, 1967. Until that date, the purchasers also had made timely payment of ninety-nine monthly installments of the purchase price as they became due. Each monthly installment was in the sum of $573.75 and included interest at $4\frac{1}{2}$ per cent per annum, "being payable on the amortization principle." The installment payments were to be made commencing September 10, 1959, "and then on or before the 10th day of each month thereafter until fully paid." The purchasers also had the right to prepay the balance or any part thereof without penalty.

The vendors did not furnish any abstract of title to the premises to the purchasers until after one of the purchasers, Murlin Hintz, who was the actual operator of the trailer court under the contract for deed, had received a request from the State Laboratories Department that it be furnished (1) a blueprint of the trailer court showing a plan for respacing trailers in the court in compliance with its regulations, (2) "the date when the sewage system of your trailer court will be connected to the city sewage disposal system," and (3) "the completion date for the rewiring of the electrical circuits in your court." The letter of request from the State Laboratories Department is dated November 16, 1967. In an endeavor to prepare the requested plat, using the metes and bounds description of the contract for deed as a guide, the purchasers first learned that the description was faulty. Thereupon, the purchasers consulted legal counsel who advised that they procure an abstract of the title to the premises. Promptly upon receiving the purchasers' request, the vendors furnished them with an abstract of the title certified to November 30, 1967. The purchasers had the abstract of title examined by their attorney who advised them that the title was "bad, very bad." Without further ado, the purchasers prepared and delivered to the vendors a "Notice of Rescission by Purchaser." The vendors, after receipt of the notice, informed the purchasers that

they wanted nothing to do with possession of the premises and declined to acquiesce in the attempted rescission. On the contrary, the vendors served upon the purchasers a notice of willingness to do anything necessary to continue the contract for deed in force and to assure the purchasers a marketable title to the premises.

The purchasers failed to pay the 100th installment due December 10, 1967, and vacated the premises about January 2, 1968, whereupon the vendors commenced the action at bar on January 8, 1968. The vendors alleged in their complaint the failure of the purchasers to pay the installment due December 10, 1967, and taxes for the year 1967, and declared the unpaid installments due and owing. Pursuant to stipulation of the parties, the district court appointed a receiver to operate the premises while the action was pending in the district court and during the ninety day period of redemption specified by the court. The purchasers failed to redeem the amount remaining unpaid on the contract for deed within the time specified and, thereupon, the court discharged the receiver and ordered possession of the premises to be restored to the vendors.

We shall consider first whether the purchasers had grounds for the attempted rescission of the contract for deed. The purchasers set forth three grounds in their notice of rescission: First, that the execution of the contract on the part of the purchasers "was obtained through misrepresentations that the vendors had good title" to the trailer court. Second, that the contract for deed failed to describe the lands agreed to be conveyed. Third, that the vendors' title is defective as to a substantial portion of the lands agreed to be conveyed.

At the trial, the purchasers renounced any claim that the vendors practiced fraud upon them. The metes and bounds description contained in the contract is erroneous; however, all parties to the contract believed that it correctly described the property intended to be conveyed. Because they shared the same erroneous belief, the mistake was mutual. Also, the parties are in agreement that the correct metes and bounds description is contained in Exhibit 1, the plat prepared for trial in which the trailer court is described as "Tract One", and reads as follows:

"All that part of the Northwest Quarter of the Northwest Quarter (N.W. ¼, N.W. ¼) of Section Five (5) and Government Lot One (1) of Section Six (6), Township one hundred thirty-eight North (T. 138 N.), Range eighty West (R. 80 W.) of the Fifth Principal Meridian (5th P.M.), County of Burleigh, State of North Dakota that lies within and is bounded by the following described traverse:

"The point of beginning of the traverse of the tract being described is located as follows: starting at the northwest corner of said Section Five (5) thence bearing south along the west line of said Section Five (5) a distance of one hundred sixteen (116) feet; thence bearing south forty-four degrees, twelve minutes and twenty-four seconds east (S. 44°–12'–24" E.) a distance of sixty-eight and two tenths (68.2) feet to the point of beginning. From the point of beginning the traverse continues on the same bearing a distance of one hundred thirty-five and six tenths (135.6) feet to an iron pipe in place; thence bearing south forty-two degrees and four minutes east (S. 42°–04' E.) a distance of four hundred forty-three and seven tenths (443.7) feet to an iron pipe found in place; thence bearing south twenty-four degrees and fifty-two minutes west (S. 24°–52' W.) a distance of three hundred one and nine tenths (301.9) feet; thence bearing south thirty-eight degrees and thirty-two minutes east (S. 38°–32' E.) a distance of five and four tenths (5.4) feet; thence bearing south fifty-one degrees and twenty-eight minutes west (S. 51°–28' W.) a distance of sixty-seven (67) feet, more or

less, to the left bank of the Missouri River; thence bearing northwesterly along the left bank of the Missouri River a distance of five hundred sixty-six (566) feet, more or less; thence bearing north fifty-six degrees and five minutes east (N. 56°–05′ E.) a distance of seventy-five (75) feet, more or less; thence bearing north twenty-seven degrees, nine minutes and thirty seconds west (N. 27°–09′–30″ W.) a distance of fifteen and one tenth (15.1) feet; thence bearing north ten degrees, thirty-one minutes and thirty-seven seconds east (N. 10°–31′–37″ E.) a distance of twenty-four and seven tenths (24.7) feet; thence bearing north nine degrees, forty-three minutes and thirty seconds east N. 9°–43′–30″ E.) a distance of two hundred one and nine tenths (201.9) feet to the point of beginning.

"The above described tract of land contains approximately three and eighty-four hundredths (3.84) acres, less that portion of the above described tract that lies within the right-of-way for river road and less other easements and grants of record."

■ It is clear, so far as the contract for deed is concerned, it can and should be reformed to conform with the metes and bounds description intended, the erroneous description having been inserted by mutual mistake. Wilson v. Polsfut, 78 N.D. 204, 49 N.W.2d 102 (1951). The remedy of rescission, in the absence of more compelling reasons than are shown here, is not available to avoid a contract that can be reformed by the court.

The purchasers must fail in their claim of rescission for several other reasons.

■ A contracting party having a right to rescind must comply with the statutes governing rescission. Sections 9–09–01 through 9–09–04, N.D.C.C., inclusive. Schaff v. Kennelly, 61 N.W.2d 538 (N.D. 1953) and Fedorenko v. Rudman, 71 N.W. 2d 332 (N.D.1955). Volk v. Volk, 121 N. W.2d 701 (N.D.1963). A purchaser rescinding a contract for deed must offer to account for the rents collected or to pay the reasonable value of the use and occupation of the premises. This the purchasers have not offered to do, although they have been in uninterrupted possession of the trailer court for more than eight years and collected rents from scores of tenants during that period of time.

■ The abstract of title would have revealed to the purchasers the condition of the record title. By failing to demand the abstract of title until after they had been in possession of the premises for more than eight years, and had made ninety-nine installment payments, the purchasers waived the contractual requirement that the vendors, at the time of the execution and delivery of the contract for deed, furnish to the buyers an abstract of title to the premises showing a good and marketable title thereto in the vendors and any consequent right to rescind the contract for deed by reason of any infirmity in the title. Larson v. Thomas, 51 S.D. 564, 215 N.W. 927, 57 A.L.R. 1246 (1927). See also Bates v. Smith, 48 S.D. 602, 205 N.W 661, 662 (1925), wherein the court said:

"While the court may have erred in its conclusion that defendants waived any defect in the title, we are satisfied that defendants waived their right to rescind because of any defect. Defendants were bound to make the title good under their contract (which duty they recognized), but plaintiffs, having agreed to accept the title without examination, were only entitled to have the defect remedied upon its discovery or damages for breach of warranty; the warranty was no longer a condition precedent entitling them to rescind."

Accordingly, the contractual provision for furnishing an abstract of title upon execution and delivery of the contract having been waived by the purchasers, the purchasers were no longer in position to require the vendors to perfect their title

prior to an offer by the purchasers to perform the contract.

In Arnett v. Smith, 11 N.D. 55, 88 N.W. 1037, 1041 (1902), this court had occasion to consider another attempted rescission of a contract for deed to real estate. In that case this court said:

"Furthermore, had the plaintiff made a proper offer of performance, and a demand upon the defendant for the delivery of an abstract showing merchantable title, nevertheless he would not have had the right to immediately rescind. In cases where the contract does not fix a time limit for perfecting title the vendor is entitled to a reasonable time after notice of defects in which to perfect his title or remedy any defects therein, and not until the giving of such notice, and an offer to perform the contract on the purchaser's part upon receiving a perfect title, and the refusal of the defendant thereafter to convey as agreed, would a purchaser have a right to rescind the agreement."

Unless it is made to appear, as in Werth v. Willer, 64 N.D. 119, 250 N.W. 543 (1933), that there is no reasonable probability that the vendor will be able to perform his contract by conveying a title of the quality agreed to be conveyed upon the performance of the contract by the buyer, the vendor is under no duty to perfect his title until the purchaser fully performs the contract or offers so to do.

■ The parties contracted for the sale and purchase of a "good and marketable title" to the trailer court. In Coverston v. Egeland, 69 N.W.2d 790 (N.D.1955), this court defined a "marketable title" as one that is free from reasonable doubt. As pointed out in *Coverston*, factors which are relevant to marketability include the extent to which the title has been accepted by other purchasers and incumbrancers, whether any adverse claims have been asserted against the persons in possession under the questioned title, and whether there is any reasonable likelihood of a successful attack upon the title.

We have examined the abstract of title to the premises involved and find that there are defects in the record title arising from faulty descriptions of the premises in several of the deeds in the chain of title. In the light of all of the evidence and the record title, we cannot say that the vendors will be unable to convey a good and marketable title to the premises when performance is tendered by the purchasers. The vendors may well be able to assert the application of one or more of our curative statutes, such as the Marketable Record Title Act, Chapter 47–19A, N.D.C.C., the "Color of Title" statute, Section 47–06–03, N.D.C.C., and the twenty year statute of limitations, Section 28–01–04, N.D.C.C.

The purchasers have paid to the vendors the sum of $81,801.25 principal and interest. In addition, they have paid the taxes up to and including the taxes for the year 1966. They have also made some improvements on the premises. The last payment on the contract was made on November 10, 1967, and the unpaid balance after the last installment payment was $40,013.85.

We believe that in the interest of justice the vendors should be permitted to reform the contract to contain the correct description of the land intended to be conveyed and that both the vendors and the purchasers should be permitted additional time in which to resolve the question of the vendors' title and the purchasers' default in payment of the balance of the purchase price.

The equity jurisdiction of the court has been invoked and it is a well established principle of equity that the court will retain jurisdiction to do complete justice between the parties. A court of equity will not, as a rule, enter a partial or incomplete decree. Graven v. Backus, 163 N.W.2d 320 (N.D.1968); Sittner v. Mistelski, 140 N.W.2d 360 (N.D.1966); United Accounts, Inc., v. Larson, 121 N.W.2d 628 (N.D. 1963); Arhart v. Thompson, 75 N.D. 569,

31 N.W.2d 56; Bonde v. Stern, 73 N.D. 273, 14 N.W.2d 249.

To do equity under the circumstances, the vendors will be allowed a reasonable time in which to prosecute an action to quiet the title to the premises, provided such action is commenced within sixty days after the filing of the remittitur. Upon successful completion of the action to quiet the title to the premises and a tender of a good and marketable title to the purchasers, together with an abstract of title continued to show a good and marketable title in the vendors, the purchasers have thirty days thereafter in which to pay the balance owed on the contract, which shall be computed by subtracting from the contract balance of $40,013.85 the amount paid to the vendors by the receiver plus other income, if any, from the property received by the vendors subsequent to December 10, 1967, plus interest on such balance at the contract rate from November 10, 1967, plus taxes, if any, paid by the vendors after November 10, 1967, with interest at the contract rate from the date of such payments. If, however, the purchasers fail to make timely payment of the amount required according to the foregoing provisions, judgment shall be entered against them and in favor of the vendors for a cancellation of the contract and a forfeiture of the amounts paid. No further redemption period shall be allowed.

If the vendors fail to commence an action to quiet title within the time allowed herein or, having done so, fail to perfect a good and marketable title to the premises concerned, the buyers will have a choice of remedies. If the buyers are willing to accept a conveyance to an inferior title, they shall pay the balance owing on the contract less any damages for breach of contract they may establish, or they may rescind the contract and recover the sum of $81,801.25 paid by them on the contract less the reasonable value of the use and occupancy of the premises from August 1, 1959, to January 2, 1968, with interest thereon at the legal rate from January 2, 1968. In either case the buyers shall make application to the trial court for a hearing to be held upon ten days' notice to the vendors.

The judgment of the trial court is modified in accordance with the foregoing directive and, as modified, is affirmed.

PAULSON, KNUDSON, TEIGEN and ERICKSTAD, JJ., concur.

ALVIN C. STRUTZ, J., deeming himself disqualified did not participate; EUGENE A. BURDICK, Judge of the Fifth Judicial District, sitting in his stead.