399 F.2d 711
 Arthur J. HOHMANN, Plaintiff, Appellant,
v.
PACKARD INSTRUMENT COMPANY, Inc., an Illinois corporation, et al., Defendants-Appellees.
Charles ASHBROOK et al., Plaintiffs-Appellants,
v.
PACKARD INSTRUMENT COMPANY, Inc., an Illinois corporation, et al., Defendants-Appellees.
 No. 16526.
 No. 16527.
 United States Court of Appeals Seventh Circuit.
 July 17, 1968.
 
 John J. Enright, Harry B. Reese, Robert A. Sprecher, Arnold I. Shure, Arvey, Hodes & Mantynband, Chicago, Ill., for plaintiffs-appellants.
 George S. Hoban, Perry L. Fuller, Thomas J. Weithers, Hinshaw, Culbertson, Moelmann & Hoban, Chicago, Ill., for defendants-appellees.
 David Ferber, Richard M. Phillips, Richard E. Nathan, Phillip A. Loomis, Jr., Washington, D. C., Securities & Exchange Commission, for amicus curiae.
 Before HASTINGS, SWYGERT and CUMMINGS, Circuit Judges.
 SWYGERT, Circuit Judge.
 
 
 1
 These are consolidated appeals from an interlocutory order entered by the district court, striking the class action allegations of two complaints seeking damages for alleged violations of the federal security laws.
 
 
 2
 The defendants (common to both suits) are the Packard Instrument Company, Inc., an Illinois corporation located in Brookfield, Illinois; its president, Lyle E. Packard; A. G. Becker & Co., Incorporated, of Chicago, which underwrites and sells securities; and Joseph J. Levin, chairman of the Executive Committee of A. G. Becker and a director of Packard Instrument. Packard Instrument is engaged in the business of the development, manufacture, and sale of scientific instruments, principally for the detection and measurement of radioactivity.[1]
 
 
 3
 Pursuant to a public offering of 100,000 shares of the common stock of Packard Instrument made in February 1963, the plaintiff in the first suit, Arthur J. Hohmann, purchased 500 shares of the stock. The plaintiff in the second suit, Charles Ashbrook, purchased 200 shares of the stock, and his coplaintiff, Burman Investments, a partnership, purchased 175 shares of the stock.[2] The plaintiffs in each suit based their respective actions for damages on alleged violations of the antifraud provisions of the federal securities laws,[3] claiming that a prospectus or registration statement issued by Packard Instrument in connection with the public offering of its stock omitted material facts. The actions were brought on behalf of the named plaintiffs and on behalf of a class of persons similarly situated.
 
 
 4
 After the suits were started in 1963, the parties undertook extensive discovery. Final preparation for trial was under way when, on July 1, 1966, the amendment to Rule 23 of the Federal Rules of Civil Procedure took effect.[4] Shortly thereafter, on the motions of the defendants, the district court struck the class allegations of the two complaints. From this order, these consolidated interlocutory appeals were granted.
 
 
 5
 In reaching his decision, the district judge thought that Rule 23 as amended should govern the disposition of the motions to strike the class allegations of the complaints. In so doing he referred to the Supreme Court's order approving the recommended amendments to the Federal Rules of Civil Procedure, 383 U.S. 1031, (February 28, 1966), and in particular, that part of the order providing that the amended rules "shall govern * * * in all further proceedings in actions then pending." The plaintiffs contend, however, that Rule 23 as it read before the 1966 amendment should be applied. Although this contention is arguable in light of the savings provision of the Supreme Court order,[5] we believe the district judge was correct in applying the amended rule to the facts before him since the court had made no determination whether these were or were not proper class actions before the effective date of the amendment. Nonetheless, we are of the opinion that the district judge erred in holding that these suits were not maintainable as class actions.
 
 
 6
 In essence the district judge's error resided in his reasoning that a quantitative test should be applied to the rule's requirement that the plaintiff "fairly and adequately protect the interests of the class." In his decision, the judge referred to the fact that only two out of over eight hundred purchasers of the stock in question had filed actions. He also alluded to the fact that no additional members of the alleged class had sought to intervene during the pendency of the suits. Finally, the judge mentioned that "less than 30 per cent of a select mailing group have responded favorably to a letter holding out the possibility of a favorable verdict with no assumption of any personal obligation."
 
 
 7
 The Second Circuit, in the recent case of Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968), discussed the question of how to determine the adequacy of representation and rejected the idea that "quantitative elements," such as those enumerated by the judge in the instant case, should be relied upon. We are in agreement. With respect to intervention, the Second Circuit pointed out:
 
 
 8
 If we have to rely on one litigant to assert the rights of a large class then rely we must. The dismissal of the suit out of hand for lack of proper representation in a case such as this is too summary a procedure and cannot be reconciled with the letter and spirit of the new rule. 391 F.2d at 563.
 
 
 9
 We agree that whether other members of the class have sought to intervene is not determinative of the question whether the plaintiffs are qualified to act in behalf of the absent members of the class. Even one member of a large number of claimants can provide the kind of representation for all which might otherwise be unattainable if each claimant had to act individually. In this case, there is no indication that the plaintiffs or their counsel will not make the vigorous, conscientious, and undivided effort required to "fairly and adequately protect the interests of the class."
 
 
 10
 Of course, as the defendants argue, the avoidance of a multiplicity of litigation is one consideration in deciding whether a class action should be allowed.[6] But it does not follow, as they further argue, that when there seems to be no threat of such multiplicity, there is no need for a class action. The prevention of multiplicity of suits is not the sole prerequisite contemplated by the framers of the amended rule for determining whether a class action is maintainable when there are, as here, "questions of law or fact common to the class" and when the class is "so numerous that joinder of all members is impracticable."[7]
 
 
 11
 As a further reason for refusing to allow these suits to proceed as class actions, the district judge said, "Under the circumstances present here, this court cannot find `that a class action is superior to other available methods for the fair and efficient adjudication of the controversy,'" as required by amended Rule 23(b) (3).[8]
 
 
 12
 In determining that a class action was not superior to other available methods, the district judge indicated that the instant situation was similar to that in Berger v. Purolator Products, Inc., 41 F.R.D. 542 (S.D.N.Y.1966). In light of the result in Eisen v. Carlisle & Jacquelin, supra, we think the Berger decision is of doubtful authority on this point. Moreover, the district judge did not suggest what other method for resolving the present controversy might be superior to a class action. Presumably, he had in mind individual actions, joint or several, by the purchasers of Packard Instrument stock. But this alternative would run counter to one of the purposes of a class action. As we said in Weeks v. Bareco Oil Co., 125 F.2d 84, 88, 90 (7th Cir. 1941):
 
 
 13
 [Rule 23] * * * should be construed to permit a class suit where several persons jointly act to the injury of many persons so numerous that their voluntarily, unanimously joining in a suit is concededly improbable and impracticable.
 
 
 14
 * * * * * *
 
 
 15
 To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent.
 
 
 16
 Professor Benjamin Kaplan, who was the Reporter of the Advisory Committee on Civil Rules, has voiced a similar view in a recent article. In discussing a situation which might dictate the rejection of a class action — a situation not present here — he observed:
 
 
 17
 The rule sets out a number of matters pertinent to the (b) (3) findings, and among them "the interest of members of the class in individually controlling the prosecution or defense of separate actions." This interest can be high where the stake of each member bulks large and his will and ability to take care of himself are strong; the interest may be no more than theoretic where the individual stake is so small as to make a separate action impracticable. Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (1), 81 Harv.L.Rev. 356, 391 (1967).
 
 
 18
 The present actions[9] appear to us to present a classic type of situation discussed by the Advisory Committee. The Committee said in notes accompanying the amended rule: "Subdivision (b) (3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."
 
 
 19
 The order of the district court, striking the class action allegations of the plaintiffs' complaints, is reversed.
 
 
 
 Notes:
 
 
 [1]
 In one of the complaints, there were two additional defendants, Howard W. Herman, treasurer of Packard Instrument, and Edward Shapiro, a director of Packard Instrument
 
 
 [2]
 On motion of the plaintiffs, Charles Ashbrook was dropped as a plaintiff soon after the suit was started
 
 
 [3]
 The Hohmann action alleged a violation by the defendants of section 10b of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5(2) of the General Rules and Regulations under the Securities Exchange Act of 1934. The Ashbrook action alleged a violation of sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77o.
 
 
 [4]
 Before the amendment to Rule 23 and during the pre-trial stages of the instant case, the defendants moved for an order restraining plaintiffs' counsel from contacting purchasers of the Packard Instrument stock and from advising them to intervene in the instant actions. Relying on Weeks v. Bareco Oil Co., 125 F.2d 84 (7th Cir. 1941), the district court denied the motion and, instead, permitted the plaintiffs to communicate by letter with 600 purchasers of the stock. (The total number of persons purchasing shares pursuant to the public offering was 847.) The letter advised the purchasers of the pendency of the actions and asked them whether they approved of the continuance of the suits and the representation afforded by the plaintiffs. From a total of 545 purchasers who received the letters, 203 replies were returned. Of the 171 purchasers who replied to the question whether or not they approved of the continuance of the actions, 156 approved and 15 disapproved
 
 
 [5]
 That part of the order which includes the savings provision reads:
 That the foregoing amendments and additions to the Rules of Civil Procedure shall take effect on July 1, 1966, and shall govern all proceedings in actions brought thereafter and also in all further proceedings in actions then pending, except to the extent that in the opinion of the Court their application in a particular action then pending would not be feasible or would work injustice, in which event the former procedure applies. (Emphasis added.)
 
 
 [6]
 Under subdivision (b) (3) (B) of the amended rule, the factor of multiplicity is included among the considerations in determining whether an action ought to be maintained as a class action. The subdivision provides, "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; * * *"
 
 
 [7]
 The prerequisites to a class action are set forth in subdivision (a) of the amended rule as follows:
 One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 
 
 [8]
 Subdivision (b) (3) of the amended rule reads:
 (b) CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 * * * * *
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
 
 
 [9]
 We assume, in accord with the representations made by plaintiffs' counsel during the oral argument, that these actions will be promptly consolidated