Harlen ROGELSTAD, on behalf of himself and all others similarly situated, Plaintiff and Appellant,

v.

FARMERS UNION GRAIN TERMINAL ASSOCIATION, INC., a Minnesota Corporation, Defendant and Appellee.

Civ. No. 9038.

Supreme Court of North Dakota.

Feb. 13, 1975.

Ohnstad, Twichell, Breitling, Arntson & Hagen, West Fargo, for plaintiff and appellant.

Pringle & Herigstad, Minot, for defendant and appellee.

VOGEL, Judge.

This is an appeal from an order of the Ramsey County district court denying the plaintiff's motion for an order allowing him to maintain a class action pursuant to Rule 23 of the North Dakota Rules of Civil Procedure.

In a prior appeal in this case, reported at 224 N.W.2d 544 (N.D.1974), we held that the denial of class action status was appealable, and we now consider the appeal on the merits.

Harlen G. Rogelstad, the plaintiff and appellant, brings this suit on behalf of himself and all others similarly situated for damages arising from alleged violations of Section 47–14–09 of the North Dakota Century Code relating to usury and for damages arising from alleged violations of the United States Federal Reserve Regulation Z, 15 U.S.C. § 1640, relating to truth in lending. The parties agree that the latter issue has been disposed of, contrary to Rogelstad's contentions, in Farmers Union Grain Terminal Assn. v. Nelson, 223 N.W.2d 494 (N.D.1974). The remainder of this opinion will therefore be concerned with the merits of the claim for class action status as to the cause of action alleging usury.

Rogelstad entered into contracts with the appellee, Farmers Union Grain Terminal Association, hereinafter GTA, through its line elevator at Hamberg, North Dakota, whereby Rogelstad agreed to deliver 30,000 bushels of wheat and 10,000 bushels of durum on or before June 30, 1973, at an agreed price. On February 21, 1973, Rogelstad received from GTA an advance of $2,000 on the purchase price of this grain. This advance was delivered to Rogelstad without the benefit of any written agreement, although it was apparently understood by both parties that the amount of the advance would be deducted from the agreed price at the time Rogelstad was paid for the delivered grain.

It appears that GTA handles its accounts receivable through its home office in St. Paul, Minnesota. Rogelstad asserts that the account arising from the $2,000 advance made to him was treated by GTA as any other account receivable. It further appears that in the usual course of business such accounts are initially received in St. Paul in the month in which the obligation is incurred. No interest or finance charge is assessed for this first month, and statements are not sent out until the end of the first full month following the month in which the obligation is incurred. The finance charge is computed at the rate of five-sixths of one percent per month on the

unpaid balance remaining on the principal and on the total amount of unpaid finance charges.

The advance made to Rogelstad was partially repaid in May and fully repaid on June 27, 1973, and finance charges were assessed for the months of March, April, and May 1973 in the total sum of $39.14.

It appears that the rate of interest or "finance charge" applied by GTA was five-sixths of one percent per month, while the applicable statutes as to usury limited interest rates to nine percent per annum during the pertinent period. See Sections 47–14–09, 47–14–10, and 6–03–63, N.D.C.C.

From the affidavit of the plaintiff's attorneys, filed in support of the motion for class action status, it appears that GTA owned 39 elevators in North Dakota, that the Hamberg elevator with which the plaintiff dealt is one of these, and that "numerous" customers of the Hamberg elevator received advances and were charged five-sixths of one percent on the advances, just as the plaintiff was. While the affidavit is indefinite as to the number of potential class plaintiffs, statements were made during oral argument that there were 10 or 12 potential class plaintiffs who were customers of the Hamberg elevator, which was not a very big elevator, and that there were perhaps several hundred total potential class plaintiffs within this State.

The trial court denied the motion to declare this action a class action. Pertinent portions of the court's memorandum of opinion follow:

"The plaintiff now moves for an order determining that the plaintiff be allowed to maintain this as a class action under the authority of Rule 23(a) N.D.R.Civ.P. which in part provides, that

"(1) the class is so numerous that joinder of all members is impracticable,

"(2) there are questions of law or fact common to the class,

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

"(4) the representative parties will fairly and adequately protect the interests of the class.

"The rule further provides that an action may be maintained as a class action if the above four prerequisites are satisfied and in addition:

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

"Rule 23(b)(3), N.D.R.Civ.P.

"The plaintiff's motion that he be allowed to maintain this as a class action is denied.

"An essential element of usury is the existence of an agreement that one party shall receive and the other shall pay a sum which constitutes an excessive charge for the loan or forbearance, and that the creditor intends to exact the usury.

"Weicker v. Stavely, 14 N.D. 278, 103 N.W. 753 (1905). The existence of such an agreement is a question of fact. In this instance the plaintiff bases his case upon implied agreement, there being no written contract. By brief the plaintiff acknowledges that the class which he seeks to represent may have executed promissory notes or agreements of some other type. Necessarily, in exerting a claim based upon implied agreement, such as advanced by the plaintiff, all surrounding circumstances are material and relevant in determination of the usurious issue in the case.

"If existence of usury is dependent upon promissory note or other written agreement, then interpretation of those express contracts becomes all important to the resolution of the case.

"For these reasons a common question of fact or law does not predominate over

questions affecting only individual members of the claimed class.

"The defendant, according to the files of this case, has 149 affiliated elevators and 38 line elevators located in North Dakota. Despite the number of elevators involved, there presently is but one party plaintiff in the instant action. Originally there were two but one party was dropped on motion because of a previously instituted lawsuit in Wells County in which the later party was a named defendant. No other persons have sought to intervene in the instant case and no other independent actions have been commenced in other courts. It is interesting to note that the defendant in the Wells County lawsuit unsuccessfully raised the issue of usury, and that this case presently is in the Supreme Court of North Dakota.

"These extraneous factors are relevant to the feasibility of permitting the maintenance of a class action,

"7A Wright & Miller, Fed'l Pr. & Pro., Section 1780, page 68,

and in this instance militate against the claimed representative capacity of the plaintiff."

Rule 23, North Dakota Rules of Civil Procedure, identical with Rule 23, Federal Rules of Civil Procedure, in pertinent part, reads:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular form; (D) the difficulties likely to be encountered in the management of a class action.

"(c) Determination by Order Whether Class Action to be Maintained; Notice; Judgment; Actions Conducted Partially as Class Actions.

"(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine

by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

■ It will be noted that the trial court apparently erroneously interpreted the requirements of Rule 23(b)(3) so as to require that its conditions be complied with in every case, whereas the rule itself provides that Rule 23(b)(3) offers only one of the alternative ways of finding a class action appropriate. While the parties apparently agree that neither 23(b)(1)(B) nor 23(b)(2) is applicable, it appears that the court failed to consider, as an alternative ground for finding a class action appropriate, the provisions of 23(b)(1)(A). In Yaffe v. Powers, 454 F.2d 1362 (7th Cir. 1972), the Circuit Court held that it was error for a district court to assume that " 'all of the requirements of Rule 23 of the Federal Rules of Civil Procedure must be met before an action can be classified as a class action' " (p. 1365), and called this the trial court's "most basic error" (p. 1366). We hold that the alternative basis should have been considered by the trial court, and that it could be found to apply here.

■ We believe that the trial court erred in holding, in the language quoted above, that it was relevant to the feasibility of permitting the maintenance of a class action that there is but one party plaintiff involved here and no other persons have sought to intervene and no other independent actions have been commenced. The trial court's citation to 7A Wright & Miller, Federal Practice and Procedure: Civil § 1780, page 68, is not apropos, since the matter under discussion there related to the extraneous factors which might be relevant in deciding whether expressions for or against individual actions were motivated by reasons unrelated to the merits of class action treatment. Here, we have no expressions of potential plaintiffs either for or against the use of the class action.

The better rule as to the importance of the presence or absence of other litigation in 23(b)(3) cases is stated in Wright & Miller, Section 1780, at page 71:

"If no alternative means of adjudicating the dispute are available, the mere fact that no other actions are pending hardly is significant in determining the desirability of a class action."

In Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968), the court said:

"If we have to rely on one litigant to assert the rights of a large class then rely we must. The dismissal of the suit out of hand for lack of proper representation in a case such as this is too summary a procedure and cannot be reconciled with the letter and spirit of the new rule."

This statement was quoted in Hohmann v. Packard Instrument Co., 399 F.2d 711, 714 (7th Cir. 1968), and the court added:

"We agree that whether other members of the class have sought to intervene is not determinative of the question whether the plaintiffs are qualified to act in behalf of the absent members of the class. Even one member of a large number of claimants can provide the kind of representation for all which might otherwise be unattainable if each claimant had to act individually. In this case, there is no indication that the plaintiffs or their counsel will not make the vigorous, conscientious, and undivided effort required to 'fairly and adequately protect the interests of the class.' "

■ We believe that the facts before us present a meritorious case for determination of class action status. The trial court appears to have held, at least inferentially, that the prerequisites of Rule 23(a) have been shown. It appears that this is true. The potential plaintiffs are so numerous that individual joinder is impracticable, there are questions of law and fact common to the class, the claims of the representative plaintiff are typical of the claims or defenses of the class, with one minor exception which could readily be separated into a

subclass if desired as permitted by Rule 23(c)(4)(B), and the representative party will fairly and adequately protect the interests of the class.

The principal controversy is as to the applicability of one or more of the alternative requirements of Rule 23(b). From the showing made by the plaintiff, it appears that the only possible differences between the contentions of the named plaintiff and the potential plaintiffs would arise from the fact that some potential plaintiffs may have signed notes for their advances while the named plaintiff and other potential plaintiffs did not, the individual differences as to dates of advances and repayments, and amounts of damages. The similarities, which will very likely be determinative of the right of the class plaintiffs to recover, are largely legal questions: whether the usury law applied to the factual situation we have outlined, whether an agreement is necessary in order to constitute usury, or whether the mere charging and receipt of usurious interest is sufficient. We believe that these issues "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." We therefore hold, for reasons set forth below, that the trial court abused its discretion in denying class action status.

We do so with great deference to the trial court's discretion in such matters. But we are impelled to hold as we do by several considerations.

## I

We note that the Federal appellate courts have seldom hesitated to overrule and reverse determinations of Federal district courts denying class action status. For example, see Eisen v. Carlisle & Jacquelin, *supra*; Knuth v. Erie Crawford Dairy Coop. Assn., 395 F.2d 420 (3d Cir. 1968); Yaffe v.

Powers, *supra*; Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968); Hohmann v. Packard Instrument Co., *supra*.

## II

Decisions as to whether class action status should be allowed seem to rest, more than many other judicial determinations, on judicial philosophy, rather than on precedent or statutory language. One court may look upon an allegation of the existence of a class with a "jaundiced eye" [Yaffe v. Powers, *supra*], while another may consider class actions as the "wave of the future" [Wright & Miller, § 1751], or hold that "any error, if there is one, should be in favor of allowing the class action" [Esplin v. Hirschi, *supra*].

We will interpret Rule 23 so as to provide an open and receptive attitude toward class actions.

We believe that Rule 23 is a remedial rule which "continues to have as its objectives the efficient resolution of the claims or liabilities of many individuals in a single action, the elimination of repetitious litigation and possibly inconsistent adjudications involving common questions, related events, or requests for similar relief, and the establishment of an effective procedure for those whose economic position is such that it is unrealistic to expect them to seek to vindicate their rights in separate lawsuits." Wright & Miller, Federal Practice and Procedure: Civil § 1754.

## III

We are confirmed in these views by a review of the history of what we now call class actions, but which have always been recognized and encouraged under our laws since prior to Statehood.

The Code of Civil Procedure of the Territory of Dakota, adopted by the first Legis-

lative Assembly of the Territory in 1862, contains the following, as Section 34 of Chapter VIII:

"Section 34. When the question is one of a common or general interest of many persons; or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

This section was copied from the Code of Civil Procedure of California, which retains the section in full force and effect to this day. The quoted section is still the basis for class action litigation in California at this time. 68 Nw.U.L.Rev. No. 6, p. 1024. It is contained in Section 382 of the Code of Civil Procedure of California.

In 1863, the Dakota Territorial Legislature rewrote its Code of Civil Procedure, taking much of it from the so-called "Field Code" of the State of New York, from which California had also borrowed. The 1863 Dakota statute, Section 83 of the Code of Civil Procedure, reads:

"Of the parties to the action those who are united in interest must be joined as plaintiffs or defendants; . . . and when the question is one of a common or general interest of many persons, or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole."

Substantially the same provision continued in effect through all the compilations and codifications of our statutes until the adoption of the North Dakota Rules of Civil Procedure, effective July 1, 1957, when the above statute, then Section 28–0208, N.D.R. C.1943, was declared superseded by Rules 19(a) and 23(a). The law of New York still contains essentially the same language. N.Y. Civil Practice Law and Rules, § 1005. ▆ There is .is no indication that the adoption of Rule 23 was intended in any way to reduce or minimize the use of class actions in North Dakota.

The judicial acceptance of the statutes quoted above, throughout the history of Dakota Territory and the State of North Dakota, has been generally receptive. In Bonde v. Stern, 73 N.D. 273, 14 N.W.2d 249 (1944), we traced the statute here in question back to the New York Code and cited and discussed many of the New York cases construing the New York Code provision. In Kvello v. Lisbon, 38 N.D. 71, 164 N.W. 305 (1917), we referred to the history of the equitable doctrine against multiplicity of actions and allowed a class action for the owners of all property within a city affected by special assessments. In Jones v. Grady, 62 N.D. 312, 243 N.W. 743 (1932), we allowed an action on behalf of all stockholders, resident and nonresident, of a bank.

In Horst v. Guy, 211 N.W.2d 723 (N.D. 1973), and in the prior appeal in this case, reported at 224 N.W.2d 544 (1974), we also expressed a receptive attitude toward class actions.

In view of this long tradition of hospitality toward class actions, by whatever name, we are not disposed now to take a constrictive view of class action eligibility.

## IV

Even before there was a Dakota Territory, or a California or a New York, actions such as the present one could be sustained. The class action is descended from or related to the "Bill of Peace" of English equity, early examples of which include actions by tenants or copyholders against the lord of the manor, to establish their rights under the customs of the manor. Pomeroy, Equity Jurisprudence, 5th Ed., § 247; Wright & Miller, Federal Practice and Procedure: Civil § 1751. Equity traditionally has granted relief against usurious contracts,

executory or executed. Pomeroy, *supra,* § 937.

## V

■ Class action status is not to be refused merely because individual issues will remain even after common issues are disposed of.

"The common issues need not be dispositive of the entire litigation." Dolgow v. Anderson, 43 F.R.D. 472, 490 (E.D.N.Y. 1968), quoted in State of Illinois v. Harper & Row Publishers, Inc., 301 F.Supp. 484, 489 (N.D.Ill.1969).

The presence of individual issues is "no obstacle." Siegel v. Chicken Delight, Inc., 271 F.Supp. 722 (N.D.Cal.1967).

In the present case it appears that all plaintiffs would offer the same evidence as to the interest rate charged, the computer bookkeeping methods of GTA, the relationship between GTA headquarters and local elevators, and billing methods, among other things. The principal legal question, common to all, would appear to be: "Did GTA, for 'numerous' patrons with grain purchase contracts, utilize an accounting procedure for billing interest on advances that entailed a usurious rate of interest, resulting in a charge or collection of usury?"

Once the evidence is presented as to the common questions of fact, and a disposition is made as to the common question of law, it appears that either GTA would be entitled to a decision in its favor or the class action plaintiffs would need only to prove their individual damages. In either case, the rights of small claimants would be preserved and litigated, and a vast saving of money, time, and judicial and attorney manpower would have been effected, as compared with litigation of individual claims.

## VI

We feel it is particularly important that class action access to the State courts be unimpeded, especially since the Federal courts are now closed in diversity cases to 23(b)(3) plaintiffs unless each of them has a $10,000 claim. Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); Lonnquist v. J. C. Penney Co., 421 F.2d 597 (10th Cir. 1970). For many potential class actions, State courts are the only forum available. See Closing the Courthouse Door: The Aftermath of Snyder v. Harris, 68 Nw. U.L.Rev. No. 6, p. 1011 (1974).

## VII

It is true that orders allowing or refusing class action status need not be final and may be modified. Rule 23(c)(1). But, and especially in 23(b)(3) cases where notice must be given to members of the class [see Rule 23(c)(2)], there must come a time when a final decision must be made. Otherwise, the action will be subject to interruption even during trial in order to take the time to notify the members of the newly declared class. Such postponements might be highly disruptive. If the determination is made too late, a separate and duplicitous trial might be required for the members of the newly declared class. In Esplin v. Hirschi, *supra,* the class action status was denied by the district court and reversed on appeal by the Court of Appeals, necessitating a second trial. Such results should be avoided if possible.

We reverse the district court's order determining that this action should not be maintained as a class action. The Federal courts, under similar circumstances, have made somewhat similar reversals in *Hohmann, supra, Knuth, supra,* and *Esplin, supra.* Other Federal courts, as in *Yaffe,*

*supra,* and *Eisen, supra,* have sent the matters back to the trial courts for redetermination as to whether class action status is appropriate. We believe the facts are sufficiently clear, however, so that we can determine, at this time, that class action status is appropriate. However, this determination is not intended to limit in any way the future discretion of the trial court to alter or amend the determination of class action status under Rule 23(c)(1), or to make appropriate orders under Rule 23(c)(4), or to make appropriate orders under Rule 23(d).

Reversed and remanded for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.