**Naif SABA and Ruth Mourhess, on behalf of themselves and all other residents and property owners in the City of Bismarck, County of Burleigh, and State of North Dakota similarly situated, Plaintiffs and Appellants,**

v.

**COUNTIES OF BARNES, BENSON, BURLEIGH, EDDY, FOSTER, GRIGGS, KIDDER, NELSON, AND WELLS, and Weather Modification, Inc., a domestic corporation, Defendants and Appellees.**

Civ. No. 9866.

Supreme Court of North Dakota.

June 30, 1981.

---

Fintan L. Dooley, Bismarck, for plaintiffs and appellants.

John M. Olson, State's Atty., Bismarck, for Counties of Barnes, Benson, Burleigh, Eddy, Foster, Griggs, Kidder, and Nelson.

Robert V. Bolinske, of Zuger & Bucklin, Bismarck, for Wells County.

Christine Hogan, of Pearce, Anderson & Durick, Bismarck, for Weather Modification, Inc.

VANDE WALLE, Justice.

The plaintiffs appealed from an order of the district court of Burleigh County denying their motion to have their cause of action certified as a class action pursuant to Rule 23, N.D.R.Civ.P.[1] We affirm.

This action originally was commenced by Saba against the City of Bismarck. In the first complaint Saba alleged the City was negligent for failing to maintain proper sewers and that as a result of its negligence his property was damaged by a rain storm which occurred in the Bismarck vicinity on July 31, 1975. Subsequently Mourhess was added as a party plaintiff and an amended complaint was filed naming the City and Weather Modification, Inc., as defendants. The second complaint appeared to allege that Weather Modification, Inc., had improperly seeded the clouds over the city on July 31, 1975. The City was subsequently dismissed from the action on motion of the plaintiff, and two additional complaints were filed. The last complaint, entitled "Third Amended Complaint," with which we now are concerned, names the nine counties and Weather Modification, Inc., as defendants. The gist of that complaint is that the defendants negligently seeded or caused to be seeded the clouds over the city of Bismarck, thereby causing the heavy rains which resulted in damage to the plaintiffs' properties. The third cause of action in that complaint is a request that the action be certified as a class action. The allegations of that portion of the third amended complaint are as follows:

"XXVII.

"That the City of Bismarck during said flood had a population of several thousand people.

"XXVIII.

"That said flood caused persons and businesses to lose property in the same fashion as plaintiff.

"XXIX.

"That plaintiffs bring their action in their representative capacity for the benefit of all persons described hereabove.

"XXX.

"That plaintiff brings his action in his representative capacity for the benefit of all persons described hereabove.

"XXXI.

"That such persons are so numerous that joinder here of all is impracticable and this action is accordingly brought as a class action.

"XXXII.

"The questions of liability of the Defendants are questions of law and fact common to the class.

"XXXIII.

"That the value of losses of all in the class is estimated to be in the vicinity of 6 million dollars.

"WHEREFORE the Plaintiff prays for judgment in behalf of all the class declaring that the liability of the Defendant covers all the damages sustained by the class and its members.

"WHEREFORE the plaintiff prays that the cost of giving notice to members of the class be imposed upon the Defendants.

"WHEREFORE the plaintiff prays that the damage due each member in the class be determined by a special master whose costs and disbursements be paid by the Defendants."

1. In *Holloway v. Blue Cross of North Dakota*, 294 N.W.2d 902 (N.D.1980), we held that an order denying the certification of a proceeding as a class action was an appealable order. No issue was raised in this instance as to the appealability of the trial court's order.

Pursuant to Rule 23(b), N.D.R.Civ.P., the district court held a hearing to determine whether or not the action was to be maintained as a class action and subsequently issued its order refusing to certify the action as a class action. The trial court concluded that the proceeding should not be certified as a class action "because other means of adjudicating the claims and defenses are not impracticable or inefficient, and also because a class action at this stage does not offer the most appropriate means of adjudicating the claims and defenses."

On appeal the plaintiffs have raised two issues:

1. Did the trial court abuse its discretion in refusing to conditionally certify the case as a class action?

2. Did the trial court err by not authorizing solicitation to provide funds for payment of costs under Rule 23(q)(2), N.D.R. Civ.P.?

▊ Inherent in the plaintiffs' first issue is the acknowledgment that on appeal from an order of the trial court refusing to certify a proceeding as a class action our standard of review is to determine if the trial court abused its discretion in entering such an order. We have defined an "abuse of discretion" by the trial court as an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *In Interest of F. H.*, 283 N.W.2d 202, 209 (N.D. 1979); *Wall v. Pennsylvania Life Insurance Co.*, 274 N.W.2d 208 (N.D.1979).

Although this court recognized the abuse-of-discretion standard in appeals of orders certifying or refusing to certify actions as class actions, the court has also indicated that it would not hesitate to overrule and reverse determinations denying class-action status in order to accomplish the remedial objectives of the class-action rule. *Rogelstad v. Farmers Un. Grain Ter. Assn.*, 226 N.W.2d 370 (N.D.1975). In *Rogelstad* this court indicated that decisions as to whether or not class-action status should be allowed seem to rest on judicial philosophy rather than on precedent or statutory language. The court stated it would interpret Rule 23

"so as to provide an open and receptive attitude toward class actions." 226 N.W.2d at 376.

The *Rogelstad* court was construing a rule identical to Rule 23 of the Federal Rules of Civil Procedure. Since that time we have revised Rule 23. We do not, however, determine that the philosophy of Rule 23 as it existed when it was identical to the Federal rule or as it exists now is different.

I

Rule 23(b)(2) permits the trial court to certify an action as a class action if it finds that the class is so numerous or so constituted that joinder of all members, whether or not otherwise required or permitted, is impracticable; there is a question of law or fact common to the class; a class action should be permitted for the fair and efficient adjudication of the controversy; and the representative parties will fairly and adequately protect the interests of the class. Rule 23(c)(1) lists several criteria to be considered by the trial court in determining if the class action should be permitted for the fair and efficient adjudication of the controversy. The trial court's memorandum opinion and order reflects its consideration of these criteria. The opinion makes specific reference to the provision [subsection (c) of Rule 23] which lists the criteria and the trial court's discussion of these criteria leaves us with no doubt that the required criteria were recognized and considered by the trial court.

▊ The trial court indicated that had the lawsuit been commenced originally as a class action, it would have been much more inclined to grant certification. The memorandum opinion and order notes that there was no indication that the rain had caused a deluge of claims and that the only known claims are those of the plaintiffs and one other person. The trial court concluded that those claims could easily be handled by utilizing normal procedures. We do not agree that a lack of known claims is a sound basis for refusing to certify a class. In *Rogelstad* the court specifically rejected that basis for refusing to permit maintenance of a class action:

"The fact that there is but one party plaintiff and no other persons have sought to intervene and no other independent actions have been commenced is not determinative as to the feasibility of permitting the maintenance of a class action." Syllabus by the Court ¶ 2, 226 N.W.2d at 371.

■ There is, however, a more significant basis for the trial court's decision reflected in the memorandum opinion and order from which this appeal is taken:

"Although there may be a common question of law and fact as to the legal liability of the counties and as to whether or not the rain-making actually caused an increase in the rain, there are very difficult and disparate individual questions of damages. Each person would have individual damages. It is not, as in antitrust proceedings, a situation in which once the violation is established, the damages become a matter of accounting based upon records of purchases. Ultimately, therefore, individual members of the prospective class would be required to come forward and actively participate in the suit in order to establish their particular damages. Put another way, in the end the lawsuits would be individualized."

In *Rogelstad* this court considered a similar issue and, in Syllabus by the Court ¶ 3, stated:

"Where the contentions of the named plaintiff and the potential plaintiffs are similar and involve legal questions as to the right of the class plaintiffs to recover, and these issues predominate over separate questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, it is an abuse of discretion for the trial court to deny class action status." 226 N.W.2d at 371–372.

After outlining the common questions of fact and the common question of law, the court in *Rogelstad* determined that under the facts of that case either the defendant would be entitled to a decision in its favor or the class-action plaintiffs would need

only to prove their individual damages. However, the damages in *Rogelstad* would be determined by an examination of the records because the complaint alleged usury on the part of the defendant. In this instance, as the trial court noted, the damages do not become a matter of accounting based upon records of purchases. If the defendants were determined to be liable because they negligently caused an increase in the rain, the issue of whether or not that negligence was the proximate cause of the damage to each member of the class would remain to be determined as well as the individual damage incurred. Insofar as the issue of proximate cause would need to be determined on a member-by-member basis, we agree with the trial court that the lawsuits would be individualized.

The plaintiffs refer us to *Biechele v. Norfolk & Western Railway Co.*, 309 F.Supp. 354 (N.D.Ohio 1969), which they argue involves factors similar to the ones with which we are concerned. In *Biechele* the class action sought damages and an injunction because of an alleged nuisance created by the defendant in the operation of its coal-storage and shipping facilities in Sandusky, Ohio. Although the opinion of the Federal District Court is concerned primarily with the issue of liability on the part of the defendant for maintaining a nuisance, the history of the action, as recited in the court's opinion, indicates that "to prevent as much as possible the solicitation of claims as well as to provide the court and the parties with some idea of the real magnitude of the controversy," the court entered an order requiring all those desiring to present damage claims to enter an appearance in the case. *Biechele, supra,* 309 F.Supp. at 356. The court noted that no list of the potential members of the class in the damage suit was available nor could one have been compiled, and the court therefore ordered that service would be by publication, not as a standard legal notice but prominently placed, so that the class members would have their attention drawn to it. As a result of that notice, 731 claims were filed, 532 persons declined to participate, and, ac-

cording to the court, several thousand others took no action. Subsequently, by agreement of the parties, the case was submitted to the court for a determination of the question of whether or not there was an actionable nuisance and, if there was, whether or not the plaintiffs were entitled to an injunction, to damages, or to both. The *agreement between the parties* provided that if the court found there was an actionable nuisance, a special master could be appointed to hear the evidence as to the amount of damage suffered by each of the 731 individual parties plaintiff. With respect to the damage issue the Court stated:

"The only practical means of working out the damage matter appears to be to refer the matter to a special master, who should be a resident of the Sandusky area. The special master should fix a deadline to file a written statement of claim, either personally or by counsel, before the deadline. All counsel should consult with the special master to work out the forms and procedures for filing and processing the damage claims, with the objective of reducing to a minimum the number of claims which will have to be heard upon the evidence. With respect to claims which cannot be stipulated as to amount, those claimants whose recovery does not exceed the sum of one hundred dollars shall have to pay the fees of the special master for conducting the hearing upon their claims, together with the other costs of the hearing." *Biechele, supra,* 309 F.Supp. at 359.

There are some apparent differences between the *Biechele* case and this one. The opinion, except for a brief reference to "some preliminary skirmishing" [309 F.Supp. at 354], did not indicate that class-action status was seriously contested by the defendants as it is in this action. Here, we have no agreement between the parties that the amount of damages for each member of the class would be determined by a special master. The matter of individual damages, as we have observed, was a primary reason for the trial court's refusal to certify this action as a class action. It is apparent that the trial court in *Biechele*

was also concerned with the matter of determining individual damages even though by agreement they were to be submitted to a special master. The opinion of the court required that if damages could not be stipulated, any plaintiff whose recovery did not exceed $100 must pay the fees of the special master for hearing his claim together with the other costs of the hearing. Plaintiffs, however, argue that the *Biechele* decision is authority for their request to determine the members of the class through a public notice rather than individual service. There is no doubt that the court in *Biechele* did authorize such a notice, observing that such orders "are not unknown." 309 F.Supp. at 356. Although the purpose of the public notice in *Biechele* was, as we have noted, to prevent as much as possible the solicitation of claims as well as to provide the court and the parties with some idea of the magnitude of the controversy, the court also determined that no list of the potential members of the class in the damage suit was available nor could one have been compiled.

■ Rule 23(g)(4) requires that each member of the class, not a representative party, whose potential monetary recovery or liability is estimated to exceed $100 shall be given personal or mailed notice if his identity and whereabouts can be ascertained by the exercise of reasonable diligence. Despite that provision, this court has recently suggested that notices of the action placed in the major daily newspapers or other communication media might be one possible manner of notification where it was necessary to guard the anonymity of persons who would be eligible class members but who do not want to be parties to the lawsuit. *Holloway v. Blue Cross of North Dakota,* 294 N.W.2d 902 (N.D.1980). Although we do not believe that a lack of claims filed to date is, of itself, a basis for the trial court's refusing to certify the class action, neither do we believe that it is an abuse of the trial court's discretion to refuse to provide for a public notice in order to determine whether or not a class action is warranted.

Yet another distinction between the facts in *Biechele* and those in the instant case is apparent. In *Biechele* there appeared to be little doubt that the defendant's coal-loading facility resulted in coal dust blowing about the city.[2] Here, the matter of proof that the defendants negligently caused the excessive rainfall, or caused it at all, may be substantial. Plaintiff Saba's first complaint alleged negligence on the part of the City of Bismarck in failing to properly maintain its sewer system as the cause of damage to his property. No class action was sought. Among other defenses the City raised the defense that the torrential rain was an act of God. Only in the subsequent amended complaints did plaintiffs allege the torrential rain which caused damage to their properties was a result of negligent cloud-seeding by the new defendants and request class-action status. The new defendants continue to allege that the rain was a result of an act of God. It is apparent that the issue of whether or not any man-made intervention caused the rain and, if so, whether or not it was caused negligently, may require extensive proof. What was obvious in *Biechele* as the cause of any damage is not so obvious in this instance. Furthermore, a main issue in *Biechele* was that of an injunction to prevent future damage. No such issue is present in this instance.

We agree with the plaintiffs that one of the reasons for class-action status is to permit a sharing of the expenses of litigation. 1 Newberg, *Class Actions*, Sec. 1010.1b. However, we cannot determine that the class-action rule was intended to permit the plaintiffs to obtain class-action status in order to permit them to solicit additional plaintiffs who might be willing to share the costs of exploring a novel theory of liability. In *Eisen v. Carlisle & Jac-*

quelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed. 732 (1974), the United States Supreme Court noted that a critical fact in the litigation involved in that class action was that the petitioner's individual stake in the damages award was only $70. The Court pointed out that no competent attorney would undertake a complex antitrust action to recover so inconsequential an amount and that economic reality dictated that the petitioner's suit proceed as a class action or not at all. In this instance Plaintiff Mourhess alleged damage in the amount of $11,250 and Plaintiff Saba alleged damage in the amount of $35,140. Plaintiffs' attorney has estimated the cost of litigation at $10,000. We cannot determine, as did the United States Supreme Court in *Eisen*, that the damages are so inconsequential that economic reality dictates that the petitioner's suit proceed as a class action or not at all. Plaintiffs argue that they do not have the financial resources to sustain such a suit in their individual capacities, and that may well be the situation. However, we do not believe the class-action rule was intended primarily as a vehicle by which parties whose alleged damage exceeds the estimated costs of litigation but who do not have the financial resources to sustain the costs of litigation are enabled to finance their claims, although one of the benefits to parties of class-action status is a sharing of the litigation expenses.

Rule 23(c)(1)(A and G), N.D.R.Civ.P., specifies, as two of the several criteria to be considered and given appropriate weight in determining if the class action should be permitted for fair and efficient adjudication of the controversy: (1) whether or not other means of adjudicating the claims and defenses are impracticable or inefficient, and (2) whether or not a class action offers

---

2.  "It was obvious to the casual observer that coal dust was blowing off defendant's storage piles, and the black dust observed by the irate citizenry was assumed to be coal dust. The evidence in the case leaves no doubt whatever of the correctness of this assumption.

.     .     .     .     .

"The factual conclusion is inescapable that the plaintiffs were injured in various respects, and to various extents, in their real estate, their personal property and effects, and in their persons by large quantities of coal dust blown from the shipping and storage facilities of the defendant." *Biechele v. Norfolk & Western Railway Co.*, 309 F.Supp. 354, 357 (N.D.Ohio 1969).

the most appropriate means of adjudicating the claims and defenses. The trial court determined that other means of adjudicating the claims and defenses are not impracticable or inefficient and a class action did not offer the most appropriate means of adjudicating the claims and defenses. We conclude that such determinations were not an abuse of discretion on the part of the trial court.

## II

■ Plaintiffs' second issue is concerned with subsection (q)(2) of Rule 23. That subsection provides:

"Upon a determination that the costs and litigation expenses of the action cannot reasonably and fairly be defrayed by the representative parties or by other available sources, the court by order may authorize and control the solicitation and expenditure of voluntary contributions for this purpose from members of the class, advances by the attorneys or others, or both, subject to reimbursement from any recovery obtained for the class. The court may order any available funds so contributed or advanced to be applied to the payment of any costs taxed in favor of a party opposing the class."

* BERNING, District Judge, sitting instead of PAULSON, J., disqualified.

Plaintiffs contend the trial court erred in not authorizing solicitation to provide funds for payment of costs of litigation, including notice. We have previously discussed some of the aspects of the solicitation issue. We do not view subsection (q)(2) of Rule 23 as authorizing a public solicitation for funds in order to determine whether or not the class action is feasible in the first instance. We have concluded that the trial court did not abuse its discretion in refusing to certify the action as a class action, and it follows that the trial court did not abuse its discretion in not authorizing solicitation to provide funds for payment of costs of litigation.

The order of the trial court that the proceeding not be certified as a class action is affirmed.

ERICKSTAD, C. J., PEDERSON and SAND, JJ., and BERNING, District Judge,* concur.